## MEADOWS INDEMNITY COMPANY, LIMITED

v.

## NUTMEG INSURANCE CO., et al.

No. 3:93–X–31.

United States District Court,
M.D. Tennessee,
Nashville Division.

June 23, 1994.

A. Broadus Anderson, III, Anderson & Co., New York City, William R. Willis, Jr., Nashville, TN, for plaintiff.

Vincent J. Vitkowsky, Buchalter, Nemer, Fields & Younger, New York City, for defendant.

Robert J. Walker, Anthony J. McFarland, J. Davidson French, Bass, Berry & Sims, Nashville, TN, for Willis Corroon Corp.

Stanford Miller (umpire) Shawnee Mission, KS, Ronald A. Jacks, Chicago, IL, James P. White, Greenlawn, CT, Arbitrators.

## MEMORANDUM

SANDIDGE, United States Magistrate Judge.

By Order entered May 27, 1993 (Docket Entry No. 16), the Court referred the following motion to the Magistrate Judge for consideration and disposition under 28 U.S.C. § 636(b)(1)(A): the motion of Willis Corroon Corporation ("Willis Corroon") for a Protective Order (filed March 26, 1993; Docket Entry No. 1).

Oral argument on the motion was held before the undersigned on June 21, 1993. For the reasons set forth below, Willis Corroon's motion for a protective order is denied.

## I. BACKGROUND

The referred matter comes to the Court on the Court's general docket as a small scene from a larger litigation picture which includes a currently pending arbitration action as well as lawsuits in New York and California. The underlying theme behind these proceedings involves events related to the operation of a casualty insurance/reinsurance pool. For the purposes of the matter before the Court, it is unnecessary to extensively relate the history of these proceedings and only a brief summary of events is provided.

In 1989, Meadows Indemnity Company, Ltd. ("Meadows") filed a lawsuit in the Eastern District of New York against several insurance companies and other related companies. Willis Corroon is the successor in interest to one defendant in the lawsuit, the Corroon & Black Corporation, and wholly owns another defendant, Baccala & Shoop Insurance Services ("BSIS"). Meadows complains that beginning in the late 1970's and continuing into the 1980's, BSIS established and managed an insurance/reinsurance pool ("the pool") and acted as an agent with respect to the pool for several policy issuing insurance companies. Meadows alleges, among other things, that BSIS and the companies, individually and in conspiracy, gained excessive commissions and fees from the pool and fraudulently concealed information from reinsurers participating in the pool regarding premium inadequacy, severity of expected

loss, amount of commissions and fees diverted from premiums, etc.

The District Court in New York ordered arbitration of Meadows' claims against the defendant insurance companies and stayed the claims against BSIS and Willis Corroon until completion of the arbitration proceedings. Shortly thereafter, several of the defendant insurance companies filed suit against Meadows in California. The California lawsuit is also stayed pending the arbitration results.

The arbitration currently underway involves Meadows' claims against the several insurance companies, one of which is the Hartford Group. As part of the arbitration, Meadows petitioned the arbitration panel to subpoena certain documents and records of BSIS because of its role as agent for Hartford and as manager of the pool. Hartford objected to the petition and the panel heard both written and oral arguments from both sides as to Meadows' request. On February 22, 1993, the arbitration panel issued the subpoena to BSIS, in the care of Willis Corroon, requiring the production of documents according to a schedule of documents attached to the subpoena. The schedule sets out 53 categories or types of documents which are to be produced pursuant to the subpoena, and states that production of the documents is to take place at Willis Corroon's Nashville, Tennessee office or at another location as agreed to by the parties. It appears from the parties' briefs that the documents covered by the subpoena are in fact located in a California warehouse. *See* Docket Entry No. 13.

At oral argument the Court was informed by the parties that the District Court in New York had recently issued an order, on June 14, 1993, which vacated the stay of proceedings in the New York lawsuit to the extent that Meadows is allowed to proceed with pretrial discovery against BSIS.

## II. ANALYSIS

The only issue before the Court is whether Willis Corroon, which is not a party to the

arbitration proceedings, must comply with an order from the arbitration panel requiring it to produce numerous documents, not for the panel's review at a hearing, but for inspection and copying by Meadows prior to a hearing before the panel.

Section 7 of the Federal Arbitration Act, 9 U.S.C. §§ 1–307, provides in relevant part:

> The arbitrators ... may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case ...

■ Willis Corroon's main argument for the protective order is that the arbitration panel has acted beyond their statutory authority by ordering production of documents unrelated to an order to appear before the arbitration panel, and by ordering production of the documents for review not by the arbitration panel but by a party to the arbitration. Willis Corroon's arguments are unpersuasive and I find that the arbitration panel's action of issuing the subpoena is within its authority under the Federal Arbitration Act.

Initially, I note that the arbitration panel has already determined that the documents to be provided are relevant to the arbitration proceedings. Given this Court's minimal contact with the issues involved in the litigation surrounding the pool, and the arbitration panel's expertise in this matter, there is no reason to second guess the panel's determination as to relevance.[1]

There is little dispute the arbitration panel, pursuant to its authority under Section 7, could require a witness in the name of Willis Corroon to appear before the panel and bring all of the documents at issue to a hearing. Considering the sheer number of documents addressed by the subpoena, however, this scenario seems quite fantastic and practically unreasonable. With this in mind, the arbitration panel issued the disputed subpoena as a method of dealing with complex and voluminous discovery matters in an or-

---

1. The District Court in New York appears to agree with the arbitration panel's determination of initial relevance, stating in its order, "[g]ood and sufficient reasons exist requiring the production of the documents in question at the arbitration proceeding."

derly and efficient manner. *See* Docket Entry No. 9. Mindful that one of the ultimate goals of the arbitration panel is to make a full and fair determination of the issues involved, and the underlying policies behind arbitration include the resolution of issues in an efficient and less costly manner, the panel's decision to issue the subpoena seems entirely reasonable.

■ Contrary to the arguments of Willis Corroon, I find that Section 7 authorizes the action taken by the arbitration panel. *Stanton v. Paine Webber Jackson & Curtis,* 685 F.Supp. 1241 (S.D.Fla.1988). The power of the panel to compel production of documents from third-parties for the purposes of a hearing implicitly authorizes the lesser power to compel such documents for arbitration purposes prior to a hearing. Willis Corroon's argument requires adoption of an unnecessarily constrictive and unreasonable reading of Section 7 which would limit the ability of the arbitration panel to deal effectively with a large and complex case such as the one at hand, and generally hamper the use of arbitration as a forum for dispute resolution.

With respect to Willis Corroon's arguments about the burdensome nature of the subpoena, nothing has been presented which indicates that producing the documents will in fact be unduly burdensome. While Willis Corroon and BSIS are not parties to the arbitration, they are intricately related to the parties involved in the arbitration and are not mere third-parties who have been pulled into this matter arbitrarily. The documents appear to be at a central location to which Meadows has agreed to travel. The burden of sifting through the documents and copying those needed is on Meadows. At this stage there is simply no merit to Willis Corroon's arguments about an undue burden on them. If one should arise during the course of the document production, Willis Corroon may seek protection through the appropriate district court.

It appears that whether through the arbitration proceedings or the lawsuit in New York, the documents possessed by Willis Corroon relating to the pool are going to be produced for Meadows' review. As I find that the arbitration panel acted within its authority, I see no reason to grant the protective order sought by Willis Corroon and further delay the arbitration proceedings.

The arbitration panel's subpoena is valid under the Federal Arbitration Act. The requested documents should be produced at a time and location agreed on by the parties and should be made available for inspection by Meadows. Meadows shall be responsible, at its own costs, of arranging for the copying of any documents desired. An order denying the motion for a protective order will be entered.