

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-12-2004

# Hay Grp Inc v. EBS Acquisition Corp

Precedential or Non-Precedential: Precedential

Docket No. 03-1161P

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Hay Grp Inc v. EBS Acquisition Corp" (2004). *2004 Decisions.* Paper 891.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/891

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-1161/1162
_____

HAY GROUP, INC.

v.

E.B.S. ACQUISITION CORP. ET AL,
PRICEWATERHOUSECOOPERS
L.L.P.

Appellants

_____

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

District Court Judge: Honorable Mary A.
McLaughlin
(D.C.  No. 02-MC-252, 253
(consolidated))
_____

Argued: September 15, 2003

Before:  ALITO, AMBRO, and
CHERTOFF, Circuit Judges

(Opinion Filed: March 12, 2004)

KEVIN M. TOTH
Reed Smith L.L.P.
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

PETER C. WOODFORD (argued)
CHRISTOPHER E. PAETSCH
SEYFARTH SHAW
55 East Monroe Street
Suite 4200
Chicago, Illinois 60603

*Counsel for Appellant,
PriceWaterhouseCoopers, L.L.P.*

MARY J. HACKETT
Reed Smith, L.L.P.
435 Sixth Avenue
Pittsburgh, PA 15230

KEVIN M. TOTH
Reed Smith L.L.P.
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

*Counsel for Appellant,
E.B.S. Acquisition Corp.*

NICHOLAS SANSERVINO, Jr. (argued)
WILLIS J. GOLDSMITH
SARA B. McCLURE
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113

*Counsel for Appellee*

_____

OPINION OF THE COURT

_____

ALITO, Circuit Judge:

PriceWaterhouseCoopers ("PwC") and E.B.S., non-parties to an arbitration, seek to avoid compliance with an arbitration panel's subpoena requiring them to turn over documents prior to the panel's hearing. The District Court enforced the subpoena. We reverse.

**I.**

Hay Group ("Hay") is a management consulting firm. David A. Hoffrichter left Hay's employment and joined PwC in September 1999. In early 2002, PwC sold the division employing Hoffrichter to E.B.S.

Hoffrichter's separation agreement from Hay contained a clause that forbade him from soliciting any of Hay's employees or clients for one year. The agreement further provided for arbitration to resolve any dispute arising under the agreement. In February 2000, Hay commenced such an arbitration proceeding in Philadelphia, Pennsylvania, against Hoffrichter, claiming that he had violated the non-solicitation clause.

In an attempt to obtain information for the arbitration, Hay served subpoenas for documents on E.B.S. at its Pittsburgh office and on PwC at its Philadelphia office. Hay sought to have the documents produced prior to the panel's arbitration hearing. PwC and E.B.S. objected to these subpoenas, but the arbitration panel disagreed. When PwC and E.B.S. still refused to comply with the subpoenas, Hay asked the United States District Court for the Eastern District of Pennsylvania to enforce the subpoenas. PwC and E.B.S. again objected, claiming, among other things, that the Federal Arbitration Act ("FAA") did not authorize the panel to issue subpoenas to non-parties for pre-hearing document production and that the Federal Rules of Civil Procedure prohibited the District Court from enforcing a subpoena on a non-party for documents outside the Court's territorial jurisdiction.

In November 2002, the District Court issued a decision enforcing the subpoenas and ordering the parties to resolve any remaining differences. In doing so, the District Court accepted the view of the Eighth Circuit and several district courts that the FAA authorizes arbitration panels to issue subpoenas on non-parties for pre-hearing document production. The District Court also held that even under the view of the Fourth Circuit, which permits such production only when there is a "special need," the panel's subpoenas would be valid. In addition, the District Court held that it had the power to enforce subpoenas on non-parties for document production even if the documents were located outside the territory within which the court's subpoenas could be served.

2

PwC and E.B.S. then filed the present appeal. The District Court denied their motion to stay its order pending appeal, but our Court granted their emergency motion for a stay.

## II.

### A.

On appeal, PwC and E.B.S. first argue that, under Section 7 of the FAA, 9 U.S.C. § 7, a non-party witness may be compelled to bring documents to an arbitration proceeding but may not simply be subpoenaed to produce documents. We agree.

An arbitrator's authority over parties that are not contractually bound by the arbitration agreement is strictly limited to that granted by the Federal Arbitration Act. See, e.g., Legion Insurance Company v. John Hancock Mutual Life Ins. Co., No. 01-162, 2001 WL 1159852, 2001 U.S. Dist. LEXIS 15911 at *3 (E.D. Pa. Sept. 5, 2001)("It is clear, and undisputed, that the cited statute is the only source of the authority for the validity and enforceability of the arbitrators' subpoena [over a nonparty]"); Integrity Ins. Co., in Liquidation, v. Am. Centennial Ins. Co., 885 F. Supp. 69, 71 (S.D.N.Y. 1995)("Because the parties to a contract cannot bind nonparties, they certainly cannot grant such authority to an arbitrator. Thus, an arbitrator's power over nonparties derives solely from the FAA."). Accordingly, we must look to the FAA to determine whether an arbitrator

may issue a subpoena requiring pre-hearing document production by a person or entity that is not bound by the arbitration agreement (hereinafter a "non-party").

In interpreting a statute, we must, of course, begin with the text. "The Supreme Court has repeatedly explained that recourse to legislative history or underlying legislative intent is unnecessary when a statute's text is clear and does not lead to an absurd result." United States ex rel. Mistick PBT v. Housing Authority of City of Pittsburgh, 186 F.3d 376, 395 (3d Cir. 1999). Furthermore, a court's policy preferences cannot override the clear meaning of a statute's text. See Eaves v. County of Cape May, 239 F.3d 527, 531-32 (3d Cir. 2000)("We do not find the reasoning of the courts adopting the 'majority view' persuasive, because they ignore a textual analysis of § 1961(a) and, instead, base their result on policies they find to underlie post-judgment interest and attorney's fee awards.")

Section 7 of the FAA provides as follows:

> The arbitrators selected either as prescribed in this title [9 U.S.C. §§ 1 et seq.] or otherwise, or a majority of them, ***may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book,***

3

*record, document or paper which may be deemed material as evidence in the case*. The fees for such attendance shall be the same as the fees of witnesses before masters of the United States courts. Said summons shall issue in the name of the arbitrator or arbitrators, or a majority of them, and shall be directed to the said person and shall be served in the same manner as subpoenas *to appear and testify before the court*; if any person or persons so summoned to testify shall refuse or neglect to obey said summons, *upon petition to the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators,* or punish said person or persons for contempt in the same manner as provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

9 U.S.C. § 7 (emphasis added).

This language speaks unambiguously to the issue before us. The only power conferred on arbitrators with respect to the production of documents by a non-party is the power to summon a non-party "to attend before them or any of them as a witness *and* in a proper case *to bring with him or them* any book, record, document or paper which may be deemed material as evidence in the case." 9 U.S.C. § 7(emphasis added). The power to require a non-party "to bring" items "with him" clearly applies only to situations in which the non-party accompanies the items to the arbitration proceeding, not to situations in which the items are simply sent or brought by a courier. In addition, the use of the word "and" makes it clear that a non-party may be compelled "to bring" items "with him" only when the non-party is summoned "to attend before [the arbitrator] as a witness." Thus, Section 7's language unambiguously restricts an arbitrator's subpoena power to situations in which the non-party has been called to appear in the physical presence of the arbitrator and to hand over the documents at that time.[1]

---

[1]Some states have recently adopted versions of the Uniform Arbitration Act, which differs from the Federal Arbitration Act. Some of these state statutes explicitly grant arbitrators the power to issue pre-hearing document production subpoenas on third parties. See, e.g., 10 Del. Code §5708(a) (2003)("The arbitrators may compel the attendance of witnesses and the

4

This interpretation is supported by the interpretation of similar language in a previous version of Federal Rule of Civil Procedure 45. From its adoption in 1937 until its amendment in 1991, Rule 45 did not allow federal courts to issue pre-hearing document subpoenas on non-parties. This restriction was based on a reading of the first two paragraphs of the rule, which provided as follows:

> **(a) For Attendance of Witnesses; Form; Issuance.** *Every subpoena* shall be issued by the clerk under the seal of the court, shall state the name of the court and the title of the action, and *shall command each person to whom it is directed to attend and give testimony* at a time and place therein specified. The clerk shall issue a subpoena, or a subpoena for the production of documentary evidence, signed and sealed but otherwise in blank, to a party requesting it, who shall fill it in before service.
>
> **(b) For Production of Documentary Evidence.** *A subpoena may also command the person to whom it is directed to produce the books, papers, documents, or tangible things designated therein*; but the court, upon motion made promptly and in any event at or before the time specified in the subpoena for compliance therewith, may (1) quash or modify the subpoena if it is unreasonable and oppressive or (2) condition denial of the motion upon the

production of books, records, contracts, papers, accounts, and all other documents and evidence, and shall have the power to administer oaths."); 42 Pa.C.S.A. § 7309 ("The arbitrators may issue subpoenas in the form prescribed by general rules for the attendance of witnesses and for the production of books, records, documents and other evidence.") The language of these state statutes clearly shows how a law can give authority to an arbitrator to issue pre-hearing document-production orders on third parties.

5

> advancement by the person in whose behalf the subpoena is issued of the reasonable cost of producing the books, papers, documents, or tangible things.

Fed. R. Civ. Proc. 45 (1990)(emphasis added).

Under this version of Rule 45(a), a subpoena was required to command the person to whom it was directed "to attend and give testimony." The court could then add a requirement that the subpoenaed witness bring documents with him. See Fed. R. Civ. Proc. 45(b). The accepted view was that nothing in Rule 45 gave the court the power to issue documents-only subpoenas to non-parties. See Fed. R. Civ. P. 45, Committee Notes, 1991 Amendment Subdivision (a)("Fourth, Paragraph (a)(1) authorizes the issuance of a subpoena to compel a nonparty to produce evidence independent of any deposition. This revision spares the necessity of a deposition of the custodian of evidentiary material required to be produced."); Turner v. Parsons, 596 F.Supp. 185, 186 (E.D. Pa. 1984)("Certainly, this rule permits a non-party to be subpoenaed for a deposition. Additionally, this non-party can be required to bring certain documents to a deposition. Nowhere in the rule is it stated that documents can be subpoenaed alone, that is, without requesting their production in conjunction with a deposition or trial"); 139 F.R.D. 197, 205-206 ("Under the new Rule 45, a subpoena duces tecum seeking the production of documents (or other materials) from a nonparty may be used independently of the regular testimonial subpoena; the two are no longer wedded, as they were under the prior version of Rule 45.").

Some courts have argued that the language of Section 7 implies the power to issue such pre-hearing subpoenas. See In re Security Life Insurance Co. of America, 228 F.3d 865, 870-71 (8th Cir. 2000)("We thus hold that implicit in an arbitration panel's power to subpoena relevant documents for production at a hearing is the power to order the production of relevant documents for review by a party prior to the hearing."); Meadows Indemnity Co., Ltd. v. Nutmeg Insurance Co., 157 F.R.D. 42, 45 (M.D. Tenn. 1994)("The power of the panel to compel production of documents from third-parties for the purposes of a hearing implicitly authorizes the lesser power to compel such documents for arbitration purposes prior to a hearing.").

We disagree with this power-by-implication analysis. By conferring the power to compel a non-party witness to bring items to an arbitration proceeding while saying nothing about the power simply to compel the production of items without summoning the custodian to

6

testify, the FAA implicitly withholds the latter power. If the FAA had been meant to confer the latter, broader power, we believe that the drafters would have said so, and they would have then had no need to spell out the more limited power to compel a non-party witness to bring items with him to an arbitration proceeding. As mentioned above, until its amendment in 1991, Rule 45 of the Federal Rules of Civil Procedure was framed in terms quite similar to Section 7 of the FAA, but courts did not infer that, just because they could compel a non-party witness to bring items with him, they could also require a non-party simply to produce items without being subpoenaed to testify.

Since the text of Section 7 of the FAA is straightforward, we must see if the result is absurd. See United States ex rel. Mistick PBT, 186 F.3d at 395. We conclude that it is not. Indeed, we believe that a reasonable argument can be made that a literal reading of Section 7 actually furthers arbitration's goal of "resolving disputes in a timely and cost efficient manner." Painewebber Inc. v. Hofmann, 984 F.2d 1372, 1380 (3d Cir. 1993). First, as noted above, until 1991 the Federal Rules of Civil Procedure themselves did not permit a federal court to compel pre-hearing document production by non-parties. That the federal courts were left for decades to operate with this limitation of their subpoena power strongly suggests that the result produced by interpreting Section 7 of the FAA as embodying a similar limitation is not absurd. Second, it is not absurd to read the FAA as circumscribing an arbitration panel's power to affect those who did not agree to its jurisdiction. See Legion Ins. Co. 2001 U.S. Dist. LEXIS 15911 at *4 ("the authority of arbitrators with respect to non-parties who have never agreed to be involved in arbitration is severely limited"). The requirement that document production be made at an actual hearing may, in the long run, discourage the issuance of large-scale subpoenas upon non-parties. This is so because parties that consider obtaining such a subpoena will be forced to consider whether the documents are important enough to justify the time, money, and effort that the subpoenaing parties will be required to expend if an actual appearance before an arbitrator is needed. Under a system of pre-hearing document production, by contrast, there is less incentive to limit the scope of discovery and more incentive to engage in fishing expeditions that undermine some of the advantages of the supposedly shorter and cheaper system of arbitration. See COMSAT Corp. v. Natl. Science Foundation, 190 F.3d at 269, 276 (4th Cir. 1999)("The rationale for constraining an arbitrator's subpoena power is clear. Parties to a private arbitration agreement forego certain procedural rights attendant to formal litigation in return for a more efficient and cost-effective resolution of their dispute. A hallmark of arbitration – and a necessary precursor to its efficient operation – is a limited discovery process."). Thus, contrary to Hay's claim, heeding the clear language of Section 7 does not lead to absurd or even unreasonable results.

Of course, one may well think that it would be preferable on policy grounds for arbitrators to be able to require non-parties to produce documents without also subpoenaing them to appear in person before the panel. But if it is desirable for arbitrators to possess that power, the way to give it to them is by amending Section 7 of the FAA, just as Rule 45 of the Federal Rules of Civil Procedure was amended in 1991 to confer such a power on district courts.

The Fourth Circuit has interpreted Section 7 in a way that is largely consistent with our reading. In <u>COMSAT Corp. v. Natl. Science Foundation</u>, <u>supra</u>, the court held that the plain meaning of Section 7 did not empower an arbitrator to issue pre-hearing discovery subpoenas to nonparties:

> Nowhere does the FAA grant an arbitrator the authority to order non-parties to appear at depositions, or the authority to demand that non-parties provide the litigating parties with documents during pre-hearing discovery. By its own terms, the FAA's subpoena authority is defined as the power of the arbitration panel to compel non-parties to appear 'before them;' that is, to compel testimony by non-parties at the arbitration hearing.

190 F.3d at 275. In dicta, however, the <u>COMSAT</u> court suggested that an arbitration panel might be able to subpoena a non-party for pre-hearing discovery "under unusual circumstances" and "upon a showing of special need or hardship." <u>Id</u>. at 276 . While we agree with <u>COMSAT</u>'s holding, we cannot agree with this dicta because there is simply no textual basis for allowing any "special need" exception. Again, while such a power might be desirable, we have no authority to confer it.

We have carefully considered but must respectfully disagree with the Eighth Circuit's holding in <u>Security Life</u> that Section 7 authorizes arbitrators to issue pre-hearing document-production subpoenas on non-parties. In <u>Security Life</u>, the Eighth Circuit reasoned that the "the interest in efficiency is furthered by permitting a party to review and digest relevant documentary evidence prior to the arbitration hearing." <u>Security Life</u>, 228 F.3d at 870. In our view, however, this policy argument cannot supersede the statutory text.[2]

---

[2]We have also considered the District Court decisions that have reached similar results. <u>See</u> <u>In re Arbiration between Douglas Brazell and America Color Graphics, Inc.</u>, 2000 U.S. Dist. Lexis 4482 (S.D.N.Y. April 6, 2000); <u>Meadows Indemnity Co., Ltd. v. Nutmeg Insurance Co.</u>, 157 F.R.D. 42, 45 (M.D. Tenn. 1994); <u>Stanton v. Paine Webber</u>, 685 F.Supp 1241, 1242 (S.D. Fla 1988).

Even if we were to look outside the statutory text to make our decision, any argument in favor of ignoring the literal meaning of the FAA in the name of efficiency seems to cut against Supreme Court precedent regarding the role of efficiency considerations in interpreting the Act. Although efficiency is certainly an objective of parties who favor arbitration over litigation, see, e.g., Alexander v. Gardner-Denver Co., 415 U.S. 36, 58 (1974); Painewebber Inc. v. Hofmann, 984 F.2d 1372, 1380 (3d Cir. 1993), efficiency is not the principal goal of the FAA. Rather, the central purpose of the FAA is to give effect to private agreements. See Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218-19 (1985)("Byrd") ("The legislative history of the Act establishes that the purpose behind its passage was to ensure judicial enforcement of privately made agreements to arbitrate. We therefore reject the suggestion that the overriding goal of the Arbitration Act was to promote the expeditious resolution of claims.").

In Byrd, the Supreme Court addressed the argument that considerations of efficiency should control the interpretation of the provisions of the FAA relating to the enforcement of arbitration agreements. The complaint in that case asserted a federal claim that was not going to be arbitrated, as well as

None of these cases provides an adequate justification for disregarding the plain meaning of Section 7's text.

pendent state claims that were covered by a mandatory arbitration agreement. The Supreme Court was presented with the argument that the District Court had the authority to refuse to compel arbitration of the pendent claims because this would have resulted in wasteful bifurcated proceedings and because the drafters of the FAA had not explicitly considered the prospect of such proceedings. See 470 U.S. at 219.

Rejecting this argument, the Supreme Court noted that the terms of Sections 3 and 4 of the FAA, 9 U.S.C. §§ 3 and 4, required the District Court to compel arbitration of the pendent claims. See 470 U.S. at 218. The Court then examined the legislative history of the FAA and "reject[ed] the suggestion that the overriding goal of the Arbitration Act was to promote the expeditious resolution of claims." Id. Instead, the Court concluded, "[t]he preeminent concern of Congress in passing the Act was to enforce private agreements into which the parties had entered." Id. at 221. This concern, the Court held, required rigorous enforcement of agreements to arbitrate. Id. We take from Byrd the lesson that Congress's failure explicitly to consider an inefficient byproduct of the Arbitration Act does not render the text ambiguous.

Under Byrd's reasoning, efficiency considerations clearly cannot override the terms of Section 7. Indeed, since the efficiency interest was far stronger in Byrd than it is in this case, the result here follows a fortiori. In a case such as the

9

one before us, convening and adjourning an arbitration panel will hardly prove an insurmountable obstacle; the costs will be slight in comparison to amassing and transporting a huge volume of documents. Interpreting Section 7 as we do shifts the balance of power slightly from the party that seeks the documents to the non-party that is subpoenaed. Under our interpretation, the party seeking the documents cannot simply obtain a subpoena requiring the documents to be shipped from one warehouse to another; instead, the party will be forced to appear at a proceeding during which the documents are produced. This slight redistribution of bargaining power is unlikely to have any substantial effect on the efficiency of arbitration. Moreover, as we noted in the previous section, the rule we adopt in this case may in fact facilitate efficiency by reducing overall discovery in arbitration. In any event, if patent inefficiency, such as that resulting from the bifurcated proceedings at issue in <u>Byrd</u>, is insufficient to overcome a textual command, an ambiguous efficiency effect certainly cannot do so.

In sum, we hold that the FAA did not authorize the panel to issue a pre-hearing discovery subpoena to PwC and E.B.S.. We further reject any "special needs exception" to this rule. If Hay wants to access the documents, the panel must subpoena PwC and E.B.S. to appear before it and bring the documents with them.

**B.**

We now turn to the PwC's argument[3] that the subpoenas at issue in this case were improper for an additional reason, namely, because they sought the production of documents that were located outside the territorial jurisdiction of the District Court. Although it is not strictly necessary for us to decide this issue at this time, we believe that it is appropriate for us to do so because of the potential that Hay will obtain a new subpoena calling on a PwC representative to appear at an arbitration proceeding and to bring the documents at issue to that proceeding. If that occurs, PwC may renew the argument in question, and the likely result would then be another appeal. In order to avoid unnecessary litigation, we address PwC's argument now.

PwC contends that Fed. R. Civ. Proc. 45(a)(2)[4] prohibits subpoenas duces

---

[3]E.B.S. does not join in this argument.

[4]Fed. R. Civ. Proc. 54(b)(2) provides in relevant part as follows:
> [A] subpoena may be served at any place within the district of the court by which it is issued, or at any place without the district that is within 100 miles of the place of the deposition, hearing, trial, production, or inspection specified in the subpoena or at any place without the state where a state statute or rule

10

tecum for documents located outside the territory within which a subpoena may be served under Fed. R. Civ. Proc. 45(b)(2). PwC relies on the following language in Rule 45(a)(2):

> If separate from a subpoena commanding the attendance of a person, a subpoena for production or inspection shall issue from the court for the district in which the production or inspection is to be made.

As applied to the situation that we have postulated (the subsequent service on PwC of a subpoena calling for both an appearance before the arbitration panel and the production of documents), PwC's argument has several flaws. We will mention two.

First, the portion of Rule 45(a)(2) on which PwC's argument is based applies only to a subpoena duces tecum that is "separate from a subpoena commanding

> of court permits service of a subpoena issued by a state court of general jurisdiction sitting in the place of the deposition, hearing, trial, production, or inspection specified in the subpoena.

the attendance of a person." We have held, however, that the FAA does not permit such subpoenas. The portion of Rule 45(a)(2) that applies when a witness is subpoenaed to appear contains no similar language. Rather, that portion of the Rule states only that a subpoena for attendance at a trial, hearing, or deposition shall issue from the court for the district "in which the hearing or trial or hearing is to be held" or from "the court for the district designated in the notice of deposition as the district in which the deposition is to be taken." Nothing in this language suggests that a witness who is subpoenaed to testify may not also be directed to bring documents that are not located within the territorial limits set out in Rule 45(b)(2).

Second, PwC misinterprets the language in Rule 45 (a)(2) on which it relies. As noted, that provision states that a subpoena calling only for the "production or inspection" of documents "shall issue from the court for the district in which the production or inspection is to be made." "Production" refers to the delivery of documents, not their retrieval, and therefore "the district in which the production . . . is to be made" is not the district in which the documents are housed but the district in which the subpoenaed party is required to turn them over.

The Notes to the 1991 Amendment reflect the same understanding of this language. The Notes state: "Paragraph (a)(2) makes clear that the person subject to the subpoena is required to produce

materials in that person's control *whether or not the materials are located within the District or within the territory within which the subpoena can be served*." Fed. R. Civ. Proc. 45, Committee Notes, 1991 Amendment Subdivision (a)(emphasis added); see also 9 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE para. 45.03 (3d ed. 2000)("The subpoena should issue from the Court where the production of documents is to occur, regardless of where the documents are located."); 9A CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2456 at 31 (1995 & 2003 Supp.)("Even records kept beyond the territorial jurisdiction of the district court issuing the subpoena may be covered if they are controlled by someone subject to the court's jurisdiction.").

PwC's belief that a subpoena cannot reach extraterritorial documents seems to arise out of a misreading of Legion Ins. Co. v. John Hancock Mutual Life Ins. Co., 33 Fed. Appx. 26, 2002 WL 537652, 2002 U.S. App. LEXIS 6797 (3d Cir. 2002). In Legion, the United States District Court for the Eastern District of Pennsylvania held that it lacked personal jurisdiction over a party, CSIS, on whom an arbitrator's subpoena had been served, and the Court therefore refused to enforce the subpoena. Affirming, a panel of our Court wrote that "in light of the territorial limits imposed by Rule 45 upon the service of subpoenas, we conclude that the District Court did not commit error in denying [the] motion to enforce the arbitration subpoena against CSIS, which, as a

nonparty located in Florida, lies beyond the scope of the court's subpoena enforcement powers." Legion, 33 Fed. Appx. at 28, 2002 U.S. App. Lexis 6797 at *7. PwC cites language in the opinion that it interprets as supporting its argument, but PwC takes that language out of context. The other cases on which and PwC relies are either unpersuasive or inapposite.[5]

[5]PwC relies on the statement in Natural Gas Pipeline Co. of Am. v. Energy Gathering, Ltd., 2 F.3d 1397, 1406 (5th Cir. 1993), that "a federal court sitting in one district cannot issue a subpoena *duces tecum* to a non-party for the production of documents located in another district." However, this statement was dictum; the basis for the statement is unclear; and it appears that both the subpoena recipient and the documents in that case may have been located beyond the reach of Fed. R. Civ. Proc. 45(b)(2)(the court was in Houston, Texas, and the non-party and the records were in Mississippi).

In Cates v. LTV Aerospace Corp., 480 F.2d 620 (5th Cir. 1973), Navy regulations specified that the documents in question could be obtained only from the Secretary of the Navy in Washington, but a party attempted to obtain the documents by serving a subpoena on the commanding officer of a naval facility in Texas. The court held that the regulations could not be circumvented in this way. The critical factor in Cates was not the location of the documents but the

We have considered all of the arguments made by PwC regarding the location of the documents, but we find them unconvincing.

### III.

For the reasons set out above, the order of the District Court is reversed.

CHERTOFF, <u>Circuit Judge</u>, concurring:

I join Judge Alito's opinion in full. But I appreciate the reason that a number of courts have been motivated to read a pre-hearing discovery power into the arbitration rules. I write separately to observe that our opinion does not leave

---

location of the officer from whom they had to be sought.

In <u>Ariel v. Jones</u>, 693 F.2d 1058 (11th Cir. 1982), a district court in Florida quashed a subpoena duces tecum for documents stored in Colorado on the ground that the agent served in Florida did not have effective control of the documents. In affirming, the court of appeals did not endorse the principle advocated by PwC that a non-party may not be subpoenaed to produce documents located outside the district court's territorial jurisdiction. Rather, the court of appeals held that the trial court had not abused its discretion in quashing the subpoena as unreasonable and oppressive.

arbitrators powerless to require advance production of documents when necessary to allow fair and efficient proceedings.

Under section 7 of the Federal Arbitration Act, arbitrators have the power to compel a third-party witness to appear with documents before a single arbitrator, who can then adjourn the proceedings. This gives the arbitration panel the effective ability to require delivery of documents from a third-party in advance, notwithstanding the limitations of section 7 of the FAA. In many instances, of course, the inconvenience of making such a personal appearance may well prompt the witness to deliver the documents and waive presence. <u>See</u> David M. Heilbron, <u>The Arbitration Clause, the Preliminary Conference, and the Big Case</u>, 45 Arb. J. 38, 43-44 (1990).

To be sure, this procedure requires the arbitrators to decide that they are prepared to suffer some inconvenience of their own in order to mandate what is, in reality, an advance production of documents. But that is not necessarily a bad thing, since it will induce the arbitrators and parties to weigh whether advance production is really needed. And the availability of this procedure within the existing statutory language should satisfy the desire that there be some mechanism "to compel pre-arbitration discovery upon a showing of special need or hardship." <u>Comsat Corp. v. Nat'l. Sci. Found.</u>, 190 F.3d 269, 276 (4th Cir. 1999).