**MATRIA HEALTHCARE, LLC,
f/k/a Matria Healthcare,
Inc., Plaintiffs,**

v.

**Angus M. DUTHIE and Thomas
Hannon, Defendant.**

**No. 08 C 5090.**

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 6, 2008.

Gregory J. Scandaglia, John Brendan Thornton, Scandaglia & Ryan, Chicago, IL, for Plaintiffs.

Bradley Paul Nelson, Jose A. Lopez, Kristen Elizabeth Hudson, Schopf & Weiss LLP, Chicago, IL, for Defendant.

## *MEMORANDUM OPINION*

JEFFREY COLE, United States Magistrate Judge.

On February 22, 2008, I enjoined Matria Heathcare LLC from proceeding with claims against Mr. Duthie and Mr. Michael J. Condon in a pending arbitration proceeding before the American Arbitration Association arising out of the half-billion-dollar merger agreement between Matria and CorSolutions. The remaining aspects of the arbitration against others was unaffected by the preliminary injunction. *See Duthie v. Matria Healthcare, Inc.,* 535 F.Supp.2d 909 (N.D.Ill.2008), *aff'd, Duthie v. Matria Healthcare,* 540 F.3d 533 (7th Cir.2008).

In connection with the arbitration, Matria desires to take the depositions of Messrs. Duthie and Hannon in the discovery that is ongoing in the arbitration proceeding. Neither is a party to the arbitration. Matria first tried to secure the attendance of Mr. Duthie by agreement with his counsel. That effort proved unsuccessful. Matria then obtained a subpoena from the AAA, served Mr. Duthie, and allegedly reached an agreement with opposing counsel regarding the date of the deposition. Mr. Duthie's counsel has a different view. In any event, four days before the scheduled deposition, Mr. Duthie's counsel informed Matria that he would not appear for his deposition.

Messrs. Duthie and Hannon were, they said, unwilling to submit to deposition because of a claimed breach of an agreement they had with Matria whereby their attor-

ney's fees and expenses incurred in connection with their depositions would be advanced. In reliance on that agreement, their counsel say they reviewed and analyzed millions of pages of documents in order to prepare five witnesses for depositions and to defend three of those depositions. However, when Matria got the initial bills, which were in the neighborhood of $450,000 for over 1500 hours of deposition preparation, it balked at payment, especially since it claims to have spent only 100 hours preparing for the depositions.[1] Matria is contesting the reasonableness of those fees and expenses before the Delaware Chancery Court. In the interim, it has paid what it deems reasonable fees incurred by counsel for Messrs. Duthie and Hannon.

The defendants' counsel have refused to proceed without full and immediate payment. The defendants contend that under Delaware law Matria is obligated to pay the bills in advance, regardless of the amount, and then seek judicial review.

The defendants declined my suggestion that the fees they are seeking be placed in escrow, pending the outcome of the proceedings in the Delaware court. They stand ready, they say, to appear for the depositions if their bills are paid in advance. If not, they insist they have no obligation to appear, and that neither the arbitrators nor a federal court are empowered to require their appearance. Each party insists that the plain language of the Federal Arbitration Act supports its position.

█ An arbitrator's authority over parties that are not contractually bound by an arbitration agreement is strictly limited to that granted by the Federal Arbitration Act ("FAA"). *Hay Group, Inc. v. E.B.S.*

*Acquisition Corp.,* 360 F.3d 404, 406 (3rd Cir.2004) (Alito, J.). Under the applicable provision of the FAA, Section 7:

> The arbitrators selected either as prescribed in this title [9 U.S.C. §§ 1 et seq.] or otherwise, or a majority of them, may summon in writing any person to attend *before them* or any of them *as a witness* and in a proper case to bring with him or them any book, record, document or paper which may be deemed material *as evidence in the case....* Said summons shall issue in the name of the arbitrator or arbitrators, or a majority of them, and shall be directed to the said person and shall be served in the same manner as subpoenas *to appear and testify before the court;* if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition to the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons *before said arbitrator or arbitrators,* or punish said person or persons for contempt in the same manner as provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

9 U.S.C. § 7 (Emphasis supplied).

█ As always, we begin with the text of the statute, and if its terms are clear, that is the end of the inquiry. *Carter v. United States,* 530 U.S. 255, 257, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000); *United States v. Berkos,* 543 F.3d 392, 396–97 (7th Cir.2008); *First National Bank of Chicago v. Standard Bank and Trust,* 172 F.3d 472, 476 (7th Cir.1999); *In the Matter of*

---

1. The defendants have argued that the costs are reasonable and that they are really only charging about thirteen cents a page—down from the original estimate of eighteen cents a page—for review of the vast number of documents that had to be analyzed to properly prepare their clients.

*Sinclair,* 870 F.2d 1340, 1343 (7th Cir. 1989) (Easterbrook, J.). *See also,* Frankfurter, *Some Reflections on The Reading of Statutes,* 47 Col. L. Rev. 527, 543 (1947) ("violence must not be done to the words chosen by the legislature."). As Justice (then Judge) Alito said in *Hay Group,* the language of § 7 "speaks unambiguously to the issue before us." 360 F.3d at 407. *Cf., Capitol Leasing Co. v. FDIC,* 999 F.2d 188, 192 (7th Cir.1993) ("If the wording [of a statute] is unambiguous, this court must enforce the congressional intent embodied by the statute.").

In *Hay Group,* the Third Circuit considered whether a non-party could be compelled to produce documents in advance of the actual arbitration hearing.[2] Writing for the court, Judge Alito said § 7 "unambiguously restricts an arbitrator's subpoena power to situations in which the non-party has been called to appear in the physical presence of the arbitrator and to hand over the documents at that time." 360 F.3d at 407. "By its own terms, the FAA's subpoena authority is defined as the power to compel non-parties to appear before them; that is, to compel testimony by non-parties at the arbitration hearing." *Id.* at 410. A deposition simply does not fall within those terms. *See also COMSAT Corp. v. National Science Foundation,* 190 F.3d 269, 275 (4th Cir.1999) ("Nowhere does the FAA grant an arbitrator the authority to order non-parties to appear at depositions....").[3]

That Congress had in mind in § 7 testimony by a witness at the arbitration and not at a deposition is apparent not only from the plain language of § 7 but from the historical background against which it was enacted. The Federal Arbitration Act was enacted in 1925. *E.E.O.C. v. Waffle House, Inc.,* 534 U.S. 279, 288, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002). The Federal Rules of Civil Procedure, with their provisions for depositions and other mechanisms for discovery, were more than a decade away. It was a time when "[t]o require the disclosure to an adversary of the evidence that is to be produced would be repugnant to all sportsmanlike instincts." 6 Wigmore, Discovery § 1845 at 490 (3rd Ed. 1940). Indeed, the common law's "sporting theory of justice" permitted the litigant to reserve evidential resources (documents and witnesses) until the final moment, marshaling them at the trial before his surprised and dismayed antagonist. It did not "openly defend or condone trickery and deception;" but it did regard "the concealment of one's evidential resources and the preservation of the opponent's defenseless ignorance as a fair and irreproachable accompaniment of the game of litigation." *Id. See also Carpenter v. Winn,* 221 U.S. 533, 540, 31 S.Ct. 683, 55 L.Ed. 842 (1911); 8 Wright, Miller & Mar-

---

**2.** That, of course, is generally a lesser burden than being forced to sit through hours of depositions, which can be "very ugly." *DF Activities Corp. v. Brown,* 851 F.2d 920, 923 (7th Cir.1988).

**3.** To be sure, in *COMSAT,* the Fourth Circuit contemplated that a party might, under unusual circumstances, petition the district court to compel pre-arbitration discovery upon a showing of special need or hardship. 190 F.3d at 276. It did not define what type of showing had to be made, but said that at a minimum, the party must demonstrate that

the information was otherwise unavailable. *Id.* Shortly thereafter, in *Application of Deiulemar Compagnia Di Navigazione S.p.A. v. M/V Allegra,* 198 F.3d 473, 480 (4th Cir.1999), the court affirmed the granting of a petition to perpetuate evidence of the condition of a vessel where the party demonstrated that the vessel was to undergo repairs and leave American waters. The condition of the ship was crucial to the party's arbitration claim, and the Fourth Circuit found that the circumstances were "extraordinary." *Id.* at 479–80. There is no claim of special need raised here.

cus, Federal Practice & Procedure: Civil 2d § 2001 at 40 (1994).

While it was possible to apply to equity for a bill of discovery to require the production of documents in advance of trial, such pretrial production was anything but common and could not in any circumstances call for an adversary's documents. *Carpenter*, 221 U.S. at 540, 31 S.Ct. 683. Prior to 1937 there had long been a statute that allowed a court in an action at law to compel one party to produce in advance of trial books and papers for examination and inspection of his adversary. *See* § 724 of the revised statutes (U.S. Comp. Stat. 1901, p. 583). Section 724 was substantially the fifteenth section of the Judiciary Act of 1789 and was intended as a substitute for an equitable bill of discovery in aid of a legal action. It could be invoked only when the document sought contains evidence pertinent to the issue and "in cases and under circumstances when they might be compelled to produce the same by the ordinary rules of proceeding in chancery."[4] But the Supreme Court in *Carpenter* held that the statute only required production at the trial. 221 U.S. at 538, 544–45, 31 S.Ct. 683. *See also Bradford v. Indiana Harbor Belt R. Co.* 300 F. 78 (7th Cir.1924).

Thus, Congress could not have intended when it enacted § 7 of the FAA in 1925 to have authorized arbitrators and district courts to require pre-hearing production in arbitrations when such production was not authorized by § 724 in actions at law. *Cf., Matter of Sinclair*, 870 F.2d 1340, 1342 (7th Cir.1989) ("To decode words one must

frequently reconstruct the legal and political culture of the drafters."). Moreover, the language of the current version of § 7 is identical to the 1925 version. *See Marine Transit Corp. v. Dreyfus*, 284 U.S. 263, 270 n. 1, 52 S.Ct. 166, 76 L.Ed. 282 (1932). The fact that Congress has not changed the language of § 7 in eighty years is compelling evidence that the original limitations inherent in § 7 were intended to remain undisturbed. " 'It will not be inferred that the legislature, in revising and consolidating the laws, intended to change their policy, unless such intention be clearly expressed.' " *Muniz v. Hoffman*, 422 U.S. 454, 470, 95 S.Ct. 2178, 45 L.Ed.2d 319 (1975). *See also United States v. LeBris*, 121 U.S. 278, 280, 7 S.Ct. 894, 30 L.Ed. 946 (1887) ("The re-enacted sections are to be given the same meaning they had in the original statute, unless a contrary intention is plainly manifested.").

Other principles of statutory construction help to inform the analysis in this case. "When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode." *Transamerica Mortgage v. Lewis*, 444 U.S. 11, 20, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *National Railway Passenger Corp. v. Passengers Association*, 414 U.S. 453, 458, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974). And " 'where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.' " *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 488, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996). *Accord United States v. Dorfman*,

---

**4.** Section 724 provided that:

In the trial of actions at law, the courts of the United States may, on motion and due notice thereof, require the parties to produce books or writings in their possession or power, which contain evidence pertinent to the issue, in cases and under circumstances where they might be compelled to produce the same by the ordinary rules of

proceeding in chancery. If a plaintiff fails to comply with such order, the court may, on motion, give the like judgment for the defendant as in cases of nonsuit; and if a defendant fails to comply with such order, the court may, on motion, give judgment against him by default. *Carpenter*, 221 U.S. at 534, 31 S.Ct. 683.

690 F.2d 1230, 1232 (7th Cir.1982) (Posner, J.) (by permitting certain conduct, the legislature intended "that what is not permitted is forbidden.").

Congress' retention of the original text of § 7 is perfectly consistent with the continuing concept of arbitration as a more efficient and cost-effective mechanism for the resolution of disputes than formal litigation. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001); *Dunmire v. Schneider*, 481 F.3d 465, 467 (7th Cir. 2007); *Choice Hotels International, Inc. v. SM Property Management, LLC*, 519 F.3d 200, 212 (4th Cir.2008). These "characteristics [are] said to be at odds with full-scale litigation in the courts, and especially at odds with the broad-ranging discovery made possible by the Federal Rules of Civil Procedure." *National Broadcasting Co., Inc. v. Bear Stearns & Co., Inc.*, 165 F.3d 184, 190–91 (2nd Cir.1999) (citing *Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 280, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995)). *Accord COMSAT Corp. v. National Science Found.*, 190 F.3d 269, 276 (4th Cir.1999) ("A hallmark of arbitration-and a necessary precursor to its efficient operation-is a limited discovery process."). *Cf. Republic of Kazakhstan v. Biedermann International*, 168 F.3d 880, 883 (5th Cir.1999) ("arbitration's principle advantages may be destroyed if the parties succumb to fighting over burdensome discovery requests. . . .").[5]

At least seven courts have concluded that arbitrators do not have authority to require non-parties to participate in discovery or to issue subpoenas for discovery depositions against third parties. *See Atmel Corp. v. LM Ericsson Telefon, AB*, 371 F.Supp.2d 402 (S.D.N.Y.2005) (collecting cases); *Guyden v. Aetna Inc.*, 2006 WL 2772695 at *7–8 (D.Conn.2006). Plaintiff cites one case to support its motion, *Amgen Inc. v. Kidney Center of Delaware County, Ltd.*, 879 F.Supp. 878 (N.D.Ill.1995), *dismissed on appeal for lack of subject matter jurisdiction*, 101 F.3d 110 (7th Cir.1996). There, the arbitrator issued a subpoena to a non-party calling for the production of documents and a representative to testify at a deposition for use in the arbitration. When the non-party objected, the arbitrator held that he had the authority to issue the subpoena under the FAA and ordered the documents produced. The non-party refused to honor the subpoena, and the plaintiff filed suit in the district court under § 7 of the FAA.

The district court rejected the non-party's argument that there is a territorial limitation on the arbitrator's power to summon "any person" before him, noting that the parties had agreed to arbitrate their dispute pursuant to the Federal Rules of Civil Procedure. "By so doing, they agreed to the liberal discovery allowed by those rules. . . ." 879 F.Supp. at 883.[6] The district court also noted that while § 7 does not appear to allow an arbitrator to order a third party to participate in a pre-trial discovery deposition, courts have held that implicit in the power

---

**5.** Indeed, the absence of protracted discovery—the bane of modern litigation, *Rossetto v. Pabst Brewing Co., Inc.*, 217 F.3d 539, 542 (7th Cir.2000) (Posner, J.)—is viewed as perhaps the most important of the advantages arbitrations enjoy over litigation in state or federal courts.

**6.** But arbitration is a matter of private contract, to which non-parties are not privy, and are thus not bound in any way. Hence, the fact that the parties in *Amgen* agreed to employ a particular procedural mechanism for the arbitration is not dispositive of the question whether non-parties can be forced under the FAA to submit to a deposition. In any event, there is no such agreement in the instant case. (*Defendants' Opposition to Motion to Enforce Subpoenas*, at 4 n. 2).

to compel testimony and documents for purposes of a hearing is the lesser power to compel such testimony and documents for purposes prior to the hearing.

Significantly, however, the issue was not disputed by the third party and thus, the district court did not have the benefit of adversarial briefing on the question. *Cf. United States v. Cronic*, 466 U.S. 648, 655, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) ("'Truth' is best discovered by powerful statements on both sides of the question.'"); *United States v. Elliott*, 467 F.3d 688, 690 (7th Cir.2006) (Easterbrook, J.) ("... judicial comments lacking the benefit of an adversarial presentation are more likely to be uninformed....") Nor did the court in *Amgen* have the benefit of the decisions from the Third and Fourth Circuits in *Hay Group* and *COMSAT.* And *Hay Group* specifically rejected the "power-by-implication" analysis in *Meadows Indemnity Co., Ltd. v. Nutmeg Insurance Co.*, 157 F.R.D. 42, 45 (M.D.Tenn.1994), on which *Amgen* relied. *See Hay Group*, 360 F.3d at 408.[7]

In sum, neither the text nor the history of § 7 of the FAA supports Matria's argument that a non-party to an arbitration can be compelled to participate in discovery without his consent.

## CONCLUSION

For the foregoing reasons, Matria's motion under § 7 of the FAA is denied. To the extent that this case requires a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(A), it is respectfully recommended that the plaintiff's motion to enforce subpoenas be DENIED.

---

7. The power by implication analysis is at odds with the plain language of § 7 and with the fundamental principles of statutory construction discussed earlier. *See supra* at 1079.