Filed 7/16/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| AIXTRON, INC.,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>VEECO INSTRUMENTS INC. et al.,<br><br>  Defendants and Respondents. | H045126<br>(Santa Clara County Super.<br>Ct. No. 17CV311362) |
| VEECO INSTRUMENTS INC.,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>AIXTRON, INC., et. al.,<br><br>  Defendants and Appellants. | H045464<br>(Santa Clara County Super.<br>Ct. No. 17CV315493) |

Miguel Saldana is a former employee of respondent Veeco Instruments, Inc. (Veeco). In 2017, Saldana resigned from his position at Veeco and went to work for a competitor, appellant Aixtron, Inc. (Aixtron). Veeco initiated arbitration proceedings against Saldana pursuant to an arbitration clause in his employee confidentiality agreement, alleging causes of action for breach of contract, breach of the duty of loyalty, and conversion, including alleged data theft. Aixtron was not a party to the arbitration. The arbitrator granted Veeco's application for a pre-hearing discovery subpoena for Aixtron's business records, which included a demand that Aixtron produce any computers that Saldana had used for forensic examination by "an agreed-upon third-party neutral expert." Over Aixtron's objections, the arbitrator granted Veeco's motion to compel and ordered Aixtron to comply with the subpoena. Aixtron initiated a special

proceeding in the superior court seeking judicial review of the arbitrator's discovery order. The superior court denied that petition. Veeco filed a separate petition in the superior court to enforce the arbitrator's discovery order, which the court granted. Aixtron appeals both orders.

On appeal, we reject Veeco's contention that the superior court's orders are not appealable. We find it unnecessary to resolve the parties' dispute over whether this case is governed by the Federal Arbitration Act (FAA) or the California Arbitration Act (CAA), since we conclude that under either statutory scheme, the arbitrator did not have the authority to issue a discovery subpoena to Aixtron in the circumstances of this case. We agree with federal appellate cases that hold there is no right to pre-hearing discovery under the FAA. As part of our analysis, we construe Code of Civil Procedure section 1282.6[1] and address, as an issue of first impression, whether it granted the arbitrator broad powers to issue pre-hearing discovery subpoenas. We conclude that it did not and hold that the arbitrator's discovery subpoena to Aixtron was not authorized under the CAA since the parties to the arbitration did not provide for full discovery rights in their arbitration agreement (§ 1283.1). Since we conclude the arbitrator did not have the authority to issue the discovery subpoena, we reverse the superior court's orders.

## I. FACTS AND PROCEDURAL HISTORY
### A. Parties & Saldana's Employment with Veeco and Aixtron

Aixtron is a global technology company that manufactures equipment for use in the semiconductor industry; its headquarters are in Herzogenrath, Germany, with an office in Sunnyvale, California. Veeco is a global electronics, semiconductor and data storage company; it is a Delaware corporation with offices in New York, New Jersey, California, and other locations. Aixtron and Veeco are competitors with respect to a technology known as the Metal Organic Chemical Vapor Deposition (MOCVD) process,

_____

[1] All undesignated statutory references are to the Code of Civil Procedure.

2

which involves layering atoms on a semiconductor wafer to create materials used to manufacture LED's, sensors, compound semiconductors, and other products.

Miguel Saldana worked for Veeco from September 2, 2014, until May 6, 2016, as its Senior Director of Hardware Engineering in Somerset, New Jersey. Weeks before starting his employment with Veeco, he signed an Employee Confidentiality and Inventions Agreement (Veeco Confidentiality Agreement), which contained an arbitration clause. Saldana decided to leave Veeco because of alleged discriminatory acts by Veeco in its hiring process. Around March 8, 2016, Saldana accepted an offer of employment from Aixtron. He resigned from Veeco seven weeks later, on April 25, 2016.

### B. Text of Arbitration Clause

The arbitration clause provided in its entirety: "<u>Arbitration of Disputes</u>. Except as provided under 'Equitable Remedies' above, any claim or controversy arising out of my employment or the cessation thereof, including any claim relating to this Agreement, shall be settled by binding arbitration, in accordance with the National Rules for Resolution of Employment Disputes of the American Arbitration Association, to be held in the county and state in which my place of employment is located, or any other location mutually agreed upon by the parties. In such arbitration, each party shall bear its own legal fees and related costs, except that the parties shall share equally the fee of the arbitrator, provided that my portion of the arbitrator's fee shall not exceed the amount of the filing fee for commencing an action in the court of general jurisdiction in the judicial district in which my place of employment is located. The decision or award of the arbitrator shall be final and binding upon the parties. The arbitrator shall have the power to award any type of legal and/or equitable relief available in a court of competent jurisdiction, including, but not limited to, the costs of arbitration and attorney's fees, to the extent such damages are available under law. Any arbitral award may be entered as a

judgment or order in any court of competent jurisdiction.  [¶]  To the extent that any claim between the parties is found not to be subject to arbitration and with respect to claims described under 'Equitable Remedies' above, such claim shall be decided either by the U.S. District Court or the state court of general jurisdiction in and for the judicial district in which my place of employment is located."  (We shall hereafter refer to this clause as the "Arbitration Clause.")

### C. *Dispute Between Saldana and Veeco*

When Saldana submitted his resignation to Veeco, he made it effective May 6, 2016.  Saldana's declaration suggests he traveled back and forth between California and New Jersey between the time he accepted the job at Aixtron and the day he resigned from Veeco.  After he resigned, someone at Veeco directed him to return to New Jersey to return Veeco's physical property, including a laptop and a tablet computer.

According to Saldana, before submitting his resignation, "with the sole intention of continuing to contribute to Veeco" as part of his continuing employment, he stored and used relevant work information on his personal electronic devices, including a laptop and a cloud storage account, so that he could work remotely from his home in California, as he had done several times before.  He declared that such use of personal computing devices was a "common practice" that was "sanctioned by Veeco."  Around the time he resigned, Saldana shipped his personal property, including his electronic devices, to California.  Veeco alleges Saldana "deliberately and purposefully concealed the fact that he had accepted employment with Aixtron for over a month" to have continued access to Veeco's confidential information.

On May 3, 2016, Saldana went through the first phase of his exit interview from Veeco in Plainview, New York, where he met with Greg Robbins (Veeco's general counsel) and Robert Bradshaw (Veeco's senior vice president for human resources).  According to Bradshaw, during that interview, Saldana initially stated that he had not

copied any Veeco data. But after they confronted him with forensic evidence that he had retained data on at least one device, Saldana admitted that he had copied Veeco data onto several personal electronic storage devices that were in the process of being shipped to California. He promised to return them immediately. According to Saldana, he did not admit to stealing any company data during his exit interview; he contends he told Bradshaw he backed up data with the sole intention of continuing to work for Veeco remotely until May 6, his last day at work. He also told them he would allow Veeco to access his personal computing devices. Bradshaw later characterized Saldana's statement as an "outright lie" and an "after-the-fact alibi." Veeco alleges that "after months of plotting and disloyal conduct," Saldana went to "its largest competitor . . . , while in possession of significant amounts of stolen . . . confidential data."

The day after his exit interview, Saldana asked Veeco's human resources director what to do about the data on his electronic devices. She told him to follow the instructions on his exit interview forms, which required him to confirm in writing that all Veeco confidential information had been deleted from his personal electronic devices. In a declaration, Saldana stated that on May 7 and May 8, 2016—before he started working for Aixtron—he followed those instructions and deleted any remaining Veeco data from his personal electronic storage devices, laptop, and online accounts.

Saldana started working for Aixtron on May 9, 2016. When hired, Aixtron required Saldana to sign its Confidential Information and Inventions Assignment Agreement, in which Saldana represented that "during his employment with Aixtron, he would not improperly make use of, or disclose, any information or trade secrets of any former employer" bring any former employer's property onto Aixtron's premises, or use any former employer's unpublished documents. Saldana also met with Aixtron's general manager, Bill Bentinck, and assured him that he would not bring any information belonging to Veeco to Aixtron and would abide by his continuing obligations to Veeco.

5

### D. *Veeco's Complaint in Superior Court (Case No. 16CV294921)*

On May 10, 2016, the day after Saldana started work at Aixtron, Veeco filed a civil complaint against Saldana (*Veeco Instruments, Inc. v. Miguel Saldana (*Super. Ct. Santa Clara County, 2016, No. 16CV294921)) "in furtherance of arbitration" (§ 1281.8) for injunctive relief based on causes of action for breach of written contract and conversion. Veeco also filed an ex parte application for "evidence preservation" and a "non-use order," directing Saldana not to access, use, copy, destroy, or modify any evidence, including metadata, related to the action. The superior court granted the ex parte application.

On May 11, 2016, Veeco's counsel sent a letter to Aixtron, advising it of the lawsuit and the court's order on the ex parte application. After receiving that letter, Bentinck met with Saldana and told him that Aixtron did not want any Veeco information on its systems and to use only Aixtron-issued devices to do his work. Saldana reaffirmed to Bentinck that he had not brought any Veeco information to Aixtron and that he would abide by his continuing obligations to Veeco.

Two weeks later, Veeco filed a notice of claim and demand for arbitration with the Judicial Arbitration and Mediation Services (JAMS) pursuant to the Arbitration Clause in the Veeco Confidentiality Agreement.[2] Veeco's arbitration demand alleged causes of action for breach of contract, breach of the duty of loyalty, and conversion against Saldana. Saldana presumably agreed that the matter was subject to arbitration, and a retired superior court judge with JAMS was appointed arbitrator. Aixtron was not a party to the superior court action or the arbitration.

---

[2] The Arbitration Clause provides that any arbitration shall be "in accordance with the National Rules for Resolution of Employment Disputes of the *American Arbitration Association*" (AAA). (Italics added.) In its petition below, Veeco told the court that Saldana and Veeco had agreed to arbitrate this dispute at JAMS and abide by the JAMS rules instead of the AAA rules.

On May 20, 2016, pursuant to the superior court's non-use and evidence preservation order, Saldana produced his personal computer and other devices to Veeco's computer forensic expert Bruce Pixley. Pixley imaged Saldana's devices and found eight files, which Veeco identified as containing "highly confidential Veeco data," on Saldana's laptop and cloud storage account. Pixley's declarations identified those files by file names. Pixley stated that "because those files resided in [Saldana's] cloud storage account, the data could be accessed from any computer or device connected to the internet, including any of Saldana's Aixtron computer media." Saldana later asserted that the files that Veeco claimed were "highly confidential" were "automatically generated systems files [that were] left over," and that he did not know about them prior to the search. He argued that he made "every reasonable effort as a common place user of [his] personal computer to delete the files [he] felt contained any Veeco data" and had offered to have the forensic expert remove those files from [his] devices, if relevant and if deemed necessary, after the nature of the file's content was assessed." As of June 2017, Veeco still had "care, custody, and control" of Saldana's personal computer.

### E. Proceedings in Arbitration Related to Discovery Subpoena

Early in the arbitration proceeding, Veeco "announced that it would be seeking pre-hearing discovery" from Aixtron "regarding Veeco's claim that Saldana had improperly shared Veeco confidential information with Aixtron." On January 17, 2017, counsel for Veeco, Aixtron, and Saldana had a telephone conference in which counsel for Veeco asked Aixtron to provide "concrete assurances . . . that no Veeco data was retained, used, or disclosed by Saldana." Veeco's counsel stated that Veeco was looking for assurances that Aixtron had conducted an investigation, reviewed its computer systems regarding things that only Saldana had touched, and done its due diligence to confirm that Saldana was not withholding a thumb drive containing Veeco data and had not accessed Veeco's confidential information in connection with his work for Aixtron.

7

Aixtron's counsel stated that Saldana had signed Aixtron's confidentiality agreement, which prohibits used of third-party data, that Aixtron's executives had reminded Saldana of his obligations to Veeco on multiple occasions, and that Aixtron had found no evidence that Saldana had brought Veeco data into Aixtron.

At an arbitration management conference with Veeco and Saldana in January 2017, the arbitrator set the arbitration hearing for August 30, 2017 and made orders regarding discovery consistent with the parties' agreements, which included "a process under which Veeco would advise Saldana of any proposed subpoena to Aixtron and Saldana would have an opportunity to object" before the arbitrator issued the subpoena. Aixtron did not participate in that conference.

The attorneys for Aixtron and Veeco spoke again on February 2, 2017. Aixtron's counsel asked if Veeco had a list of the files Saldana allegedly took and offered to have Aixtron run a targeted search for those files to determine whether they existed on Aixtron's computer systems. Veeco's counsel said he would provide a list of items that would provide reasonable assurances to Veeco.

Four days later, Veeco's counsel sent Aixtron's counsel an e-mail, demanding that Aixtron (1) hire a forensic expert of Veeco's choosing to run searches on all of Aixtron's computer media to which Saldana had had access, as well as Saldana's personal devices, for Veeco-specific terms and files; (2) interview Saldana about specified topics; and (3) provide a "high-level description of Saldana's work for Aixtron" to be used in further discussions between Veeco and Aixtron. Veeco's demands included that its expert would have the right to delete files from Aixtron's computer systems and would report back to Veeco, and that Aixtron would pay for the expert.

Aixtron rejected Veeco's demands, stating that they were "neither reasonable nor unburdensome," "extremely costly," "would interfere with Aixtron's daily business activities," and "put Aixtron's highly sensitive, confidential, and proprietary information at risk" by allowing "a competitor's forensic expert access to its most confidential and

8

proprietary information," to run searches, delete information, and report its findings to Veeco, "without Aixtron having any·control over what is disclosed to its competitor or what is done with its own information." Aixtron stated that Veeco's "offer to enter into a protective order [was] insufficient to protect the exposure and risk these actions pose to [its] confidential information." Aixtron stated that while it "understands and respects Veeco's legitimate interest in protecting its confidential information, these requested actions extend far beyond these legitimate interests" and that Veeco was "trying to place the burden of its own costs and discovery onto a third party [that] has no involvement with the dispute" against Saldana. Aixtron argued that the "requests reveal a much more nefarious apparent intent by Veeco, to improperly gain access to the confidential and proprietary information of its competitor." Aixtron said it had spoken to Saldana multiple times about his duties to Veeco, had not solicited Veeco data from Saldana, had done its own internal review, and was confident that Saldana had not brought any confidential Veeco information onto its premises.

On February 20, 2017, Veeco circulated a proposed subpoena for the production of Aixtron's business records, which demanded 16 different categories of documents and the production of certain Aixtron computers.[3] Saldana objected the following day.

On March 3, 2017, Veeco filed a motion with the arbitrator to enforce the subpoena. It argued that "Saldana's theft of highly confidential Veeco data immediately prior to leaving for Veeco's chief competitor Aixtron, his material deception to Veeco's General Counsel and Senior Vice President of Human Resources, the nature of the highly valuable MOCVD technology in a two-player market where Veeco leads and Aixtron competes, and his possession of Veeco data while employed with Aixtron—in addition to . . . Aixtron's conduct—warrant the discovery sought against Aixtron. Aixtron's

_____

[3] There is no proof of service or cover letter in the record. The arbitrator's subsequent order and other documents suggest that the proposed subpoena was sent to Saldana's counsel, and perhaps the arbitrator, but not Aixtron.

9

complete refusal to assist Veeco in this matter has undermined Aixtron's credibility and furthered the urgency of this subpoena. Saldana's claim that he has not used or disclosed the stolen Veeco data at Aixtron cannot be taken on 'scout's honor' . . . as he has lied, among other things, about retaining, returning, and deleting the stolen data, and has made multiple false certifications under oath—all while secretly starting his employment at Aixtron in possession of the stolen Veeco data . . . ."

In opposition, Saldana argued that Veeco had "gloss[ed] over the threshold procedural question" whether the arbitrator "can even order pre-hearing discovery on a nonparty." He argued that arbitrators do not have the power to enforce nonparty discovery subpoenas; that the subpoena was overbroad and sought access to highly confidential information; that the subpoena was invalid because, to the extent that it sought Saldana's employment records, it did not comply with the requirements of section 1985.6. As noted, in a declaration, Saldana stated that the " 'highly confidential' files" Veeco sought were "left over," "automatically generated systems files" that he did not know about prior to the search of his computer, that he made "every reasonable effort as a common place user of [a] personal computer to delete the files [he] felt contained any Veeco data, and had "offered to have the forensic expert remove those files from [his] devices, if relevant and if deemed necessary, after the nature of the file's content was assessed." (Aixtron refers to these files as "Binary Files.") Saldana added that Veeco had not proven that the files that remained on his computer contained Veeco data and that Veeco had taken his "cooperation and turned it into additional exaggerated, unfounded, and unreasonable claims."

In reply, Veeco argued that the arbitrator did have the power to enforce the subpoena, the subpoena was not overbroad and did not seek Aixtron's confidential information, and Saldana had waived his objection as to his employment records because he had not previously lodged that objection with the arbitrator.

On March 15, 2017, the arbitrator held a telephone hearing with counsel for Veeco and Saldana—but not Aixtron—regarding the subpoena. The arbitrator modified the language of two of Veeco's demands and approved the subpoena, as modified, for service on Aixtron. The arbitrator found that the revised subpoena was "reasonable as to subject matter and scope," and that he had "the authority, including under JAMS Employment Arbitration Rule 21, to order issuance of third party subpoenas for discovery purposes." The arbitrator signed the subpoena, ordered that it may be served on Aixtron through its counsel, and encouraged Aixtron, in the event it objected to the subpoena, to meet and confer with Veeco to determine if an agreement could be reached on a protective order and the "identity of a third party neutral and the protocols to be followed with respect to Demand No. 15."[4] Veeco served its discovery subpoena on Aixtron on or about March 17, 2017.

### F. Aixtron's Objections to the Subpoena and Veeco's Motion in Arbitration to Compel Aixtron's Compliance with the Subpoena

On April 10, 2017, Aixtron filed written objections to the subpoena in arbitration, arguing that (1) the subpoena was impermissible because Aixtron was not a party to the arbitration; (2) the requests were overbroad and irrelevant; (3) the requests sought confidential, trade secret information; and (4) and the subpoena was procedurally deficient. In addition, Aixtron made separate objections directed to each of Veeco's 16 demands. Aixtron told Veeco's counsel that, given its objections, it would not produce any documents.

On April 27, 2017, Veeco filed a motion with the arbitrator to compel Aixtron to respond to the subpoena. Aixtron filed opposition to the motion in arbitration, arguing

---

[4] Demand No. 15 requested: "ALL DOCUMENTS RELATING TO AIXTRON's handling of non-public third-party information which its employees possess or acquire, including, but not limited to, ALL DOCUMENTS RELATING TO AIXTRON'S acquisition, retention, disclosure, and/or use of any VEECO data."

that under California law, the arbitrator lacked authority to issue and enforce nonparty discovery subpoenas for two reasons. First, the dispute between Veeco and Saldana was not a personal injury or wrongful death action to which the discovery provisions of the California Arbitration Act (§ 1280 et seq.) are deemed to apply under section 1283.1, subdivision (a). Second, the parties had not incorporated the discovery provisions of section 1283.05 into their arbitration agreement or made them applicable to their arbitration agreement as required by section 1283.1, subdivision (b) for the discovery provisions to apply. As before, Aixtron argued that the subpoena was invalid because the requests were overbroad and irrelevant; the subpoena sought Aixtron's confidential, proprietary, and trade secret information; and the subpoena was procedurally deficient. Veeco filed a reply, arguing that Aixtron could not relitigate issues the arbitrator had already decided regarding his authority to enforce the subpoena and the scope of the subpoena, that Veeco sought only its own data, not Aixtron's trade secrets; and that Aixtron's arguments regarding procedural deficiencies were without merit.

In mid-May 2017, after conducting a telephone hearing on Veeco's motion to compel, the arbitrator ordered Aixtron to comply with the subpoena within twenty days. The arbitrator stated that the "discovery provisions in the arbitration statutes provide the 'default mode' that applies in the absence of an agreement between the parties as to discovery" and that *the parties* are free to agree on discovery beyond that minimum, up to the full panoply of discovery rights authorized by the Code of Civil Procedure. He stated that *the parties* had agreed to arbitrate this case under the JAMS Employment Arbitration Rules and Procedures (JAMS Rules) and that Rule 1 of the JAMS Rules provides that *the parties* "shall be deemed to have made" the JAMS Rules a part of their arbitration agreement. The arbitrator found that the "incorporated Rules allow for subpoenas directed to third parties, both at the arbitration hearing and *prior* to the hearing," citing Rule 21; that the subpoena was well within the parties' agreement as to allowable discovery; and that he had the authority and duty to enforce the parties' agreement.

12

(Original italics.)  The arbitrator's order stated, without citation to authority, that the "limitations on discovery as found in the arbitration acts was not intended to shield third parties from unwanted discovery; they were intended to put reasonable limits [on] the parties' discovery efforts, in the absence of the parties' agreement otherwise."  The arbitrator overruled Aixtron's other objections, stating that they "can be addressed by the use of privilege logs, protective orders, and designation of a neutral third party to oversee any sensitive discovery inquiries."  The arbitrator encouraged Aixtron to meet and confer with Veeco regarding a protective order and use of a third party neutral.

### G.  Aixtron's Petition in the Superior Court for Protective Order and Rehearing on the Arbitrator's Discovery Order (Case Nos. 17CV311362 & H045126)

On June 5, 2017, Aixtron filed a "petition for protective order and for rehearing on arbitrator's discovery order" in the superior court (*Aixtron, Inc. v. Veeco Instruments, Inc*. (Super. Ct. Santa Clara County, 2017, No. 17CV311362)).  Aixtron requested judicial review of the arbitrator's order on the subpoena and a protective order allowing it to refrain from responding to the subpoena.  In a declaration, Aixtron general manager Bentinck stated that Aixtron developed its MOCVD technology in Germany over 30 years, that the work done in Sunnyvale on its MOCVD technology was with respect to market segments where Aixtron and Veeco do not compete, and that its main areas of product development in the United States "relate to techniques and technologies other than MOCVD, in areas where Aixtron and Veeco do not compete."  Bentinck declared that Aixtron had not uncovered any evidence that Saldana had transferred any Veeco information to Aixtron, that he is knowledgeable about Aixtron's trade secrets, and that the subpoena sought materials that Aixtron considered "nonpublic, confidential, and proprietary," citing Veeco's demands Nos. 4 and 5.[5]  He provided additional facts that

---

[5] Veeco's demand No. 4 requested:  "ALL DOCUMENTS RELATING TO any actual or potential business transaction related to [MOCVD] technology that you have closed or reasonably expect to close in the next twelve months in which SALDANA had

13

supported Aixtron's trade secrets claim, including a description of the steps Aixtron took to insure its proprietary data remained confidential. Aixtron asked the superior court to vacate the arbitrator's discovery order, quash the subpoena, and enter a protective order excluding Aixtron's confidential information from the subpoena.

In its opposition, Veeco argued that the petition should be dismissed or denied because the court lacked authority to grant any relief. First, it argued Aixtron was not entitled to relief under section 1285, which authorizes a petition to vacate an arbitrator's award, because only parties to the arbitration may seek relief under that section and Aixtron was not a party to the arbitration. Second, it contended that the court lacked authority to order rehearing under either the JAMS Rules or the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and that *Berglund v. Arthroscopic & Laser Surgery Center of San Diego, L.P.* (2008) 44 Cal.4th 528 (*Berglund*), which held that persons who are not parties to an arbitration are entitled to full judicial review of an arbitrator's discovery order, did not apply because it was decided under the California Arbitration Act. Third, it argued Aixtron was not entitled to a protective order because it never requested one from the arbitrator and waited until after the subpoena was issued to object.

Veeco asserted that the arbitrator had twice considered Aixtron's arguments and rejected them and argued that Aixtron's purported trade secrets were not exempt from discovery, given Veeco's repeated offers to enter into a protective order. Veeco asserted that when Saldana deleted Veeco's data from his personal devices, he deleted metadata that showed when he accessed the data and whether he copied it, and that Veeco needed to know whether its data sits on Aixtron's computers and whether Saldana had used his Aixtron computer to access the Veeco data in his cloud storage.

___

any participation or involvement" and demand No. 5 asked for "ALL DOCUMENTS RELATING TO any development for AIXTRON of MOCVD technology and in which SALDANA had any participation or involvement."

14

On August 15, 2017, without explanation, the superior court denied Aixtron's petition for a protective order and for rehearing.  (We shall refer to this order as the August Order.)  Three weeks later, Aixtron filed a notice of appeal from the August Order in *Aixtron, Inc. v. Veeco Instruments, Inc*. (H045126).

### H. Veeco's Petition in the Superior Court to Enforce the Arbitrator's Discovery Order (Case Nos. 17CV315493 & H045464)

Less than an hour after Aixtron filed its notice of appeal, Veeco filed a petition against Aixtron and Saldana in the superior court to enforce the arbitrator's discovery order (*Veeco Instruments, Inc. v. Aixtron, Inc*. (Super. Ct. Santa Clara County, 2017, No. 17CV315493)).  Veeco complained that Aixtron had not produced a single document, argued that Aixtron was not entitled to object further since the matter had been fully adjudicated by the arbitrator and the superior court had denied Aixtron's petition, and asserted that the court's "intervention was necessary to ensure Aixtron's compliance."  Veeco analogized the arbitrator's discovery order to an arbitration award on the merits and argued that it was final and enforceable like any other arbitration award.

Three weeks later, Veeco advised the superior court that Aixtron had filed a notice of appeal from the August Order.  Veeco told the court the parties disputed whether the August Order was appealable and whether the appeal stayed further proceedings in the superior court in both cases and asked the court to determine whether proceedings on its petition were stayed pending Aixtron's appeal.

Aixtron filed opposition to Veeco's petition.  Aixtron argued that as a nonparty to the arbitration, it was entitled to "full judicial review" of the arbitrator's discovery order, which included the right to appeal; that the superior court's order on its petition (the August Order) was appealable; and that Veeco's petition violated the automatic stay on appeal (§ 904.1(a)(2)) since the matters raised in Veeco's petition are embraced in and affected by Aixtron's appeal.  Aixtron also reargued the merits of the dispute over the

15

discovery subpoena and reiterated its request that if discovery is ordered, it be subject to a protective order.  Veeco filed a reply.

In December 2017, without explanation, the superior court granted Veeco's petition to enforce the arbitrator's discovery order and ordered Aixtron to produce its documents within 20 days subject to a protective order that the parties to the arbitration— but not Aixtron—had stipulated to in June of 2016 in *Veeco Instruments, Inc. v. Miguel Saldana* (Super. Ct. Santa Clara County, 2016, No. 16CV294921).  (We shall refer to this order as the December Order.)  Aixtron filed a timely appeal from the December Order in *Veeco Instruments, Inc. v. Aixtron, Inc*. (H045464).

In February 2018, this court denied Aixtron's motion to consolidate the two appeals, but ordered the appeals considered together for briefing, oral argument, and disposition.

## II. DISCUSSION

### A. Parties' Contentions on Appeal

Aixtron makes three arguments on appeal.  First, it contends that the superior court erred in ordering it to comply with the discovery subpoena because under the plain language of both the CAA and the FAA, an arbitrator does not have the authority to compel a nonparty to the arbitration to produce documents in response to a discovery subpoena for business records issued by an arbitrator.  According to Aixtron, the "central issue before this Court is whether the arbitrator is authorized by federal or state statute to issue a deposition subpoena for the production of business records to a [nonparty] outside the context of the arbitration hearing."  Second, Aixtron argues that the court erred in ordering it to comply with the subpoena because Veeco failed to make the requisite showing that the information it seeks, which includes Aixtron's confidential information and trade secrets, is both *necessary* to a claim or defense and *essential* to a fair resolution of the dispute in arbitration.  Third, it argues that Veeco's document requests are overly broad, unduly burdensome, and harassing.

16

Veeco raises a threshold question of appealability. It argues that Aixtron's first appeal is improper and should be dismissed because the August Order denying Aixtron's petition for a protective order and rehearing on the arbitrator's discovery order is not appealable. In its brief, Veeco apparently concedes, however, that the December Order granting Veeco's petition to enforce the discovery subpoena is appealable. Before addressing the parties' contentions, we shall discuss two issues with the record in these appeals.

## B. Veeco's Respondent's Appendix

Veeco has filed a respondent's appendix that consists entirely of documents filed in Veeco's civil complaint against Saldana (*Veeco Instruments, Inc. v. Miguel Saldana* (Super. Ct. Santa Clara County, 2016, No. 16CV294921)) or before the JAMS arbitrator. But Aixtron has not appealed any of the court's orders in case No. 16CV294921. An appendix may contain only accurate copies of documents filed with the superior court in the matter or matters under appeal. (*In re Steroid Hormone Product Cases* (2010) 181 Cal.App.4th 145, 151, fn. 6 [inclusion of portions of deposition transcript that were not filed with the trial court is improper].) By filing an appendix, counsel represent, under risk of sanctions, that the appendix "consists of accurate copies of documents in the superior court file" in the matter under review. (Cal. Rules of Court, rule 8.124(g); *Perez v. Grajales* (2008) 169 Cal.App.4th 580, 592, fn. 11 [inclusion of unfiled documents in an appendix is improper].)

Copies of some of the documents in Veeco's appendix were filed as exhibits to the pleadings and papers filed in *Aixtron, Inc. v. Veeco Instruments, Inc.* (Super. Ct. Santa Clara County, 2017, No. 17CV311362) and *Veeco Instruments, Inc. v. Aixtron, Inc.* (Super. Ct. Santa Clara County, 2017, No. 17CV315493) and are therefore properly before us in this appeal since they are in the record in those cases. But some of the documents in Veeco's appendix were not filed in either of the cases before us. They

17

include the May 9, 2016 declaration of Veeco's forensic expert, which Veeco cites three times in its brief on appeal.  Since that declaration and other documents in Veeco's appendix were not before the superior court, we shall not consider them, except as described in the next paragraph.

A court may judicially notice the "record of . . . any court of this state."  (Evid. Code, § 452, subd. (d).)  "We may take judicial notice of the existence of judicial opinions and court documents, along with the truth of the results reached—in documents such as orders, statements of decision, and judgments—but cannot take judicial notice of the truth of hearsay statements in decisions or court files, including pleadings, affidavits, testimony, or statements of fact."  (*Williams v. Wraxall* (1995) 33 Cal.App.4th 120, 130, fn. 7.)  On our own motion, we shall take judicial notice of the court documents from *Veeco Instruments, Inc. v. Miguel Saldana* (Super. Ct. Santa Clara County, 2016, No. 16CV294921) in Veeco's appendix for the purpose of providing background information regarding the dispute between Veeco and Saldana and for the facts that the documents were filed in that case and that the court issued a preservation order.  (Evid. Code, §§ 452, subd. (d); 459.)  But we shall not consider any of the documents in Veeco's appendix that were not part of the record in the cases on appeal, including its expert's May 2016 declaration, for the truth of the matters stated therein.  (*Lindsey v. Conteh* (2017) 9 Cal.App.5th 1296, 1302, fn. 2 [judicial notice of the existence, but not the contents, of the document is proper].)

## C. *Aixtron's Request for Judicial Notice*

Aixtron has filed a motion for judicial notice, asking this court to judicially notice two declarations that were signed months after the superior court made the orders at issue:  (1) the declaration of Randy Singh, Aixtron's chief financial officer, who helped coordinate a forensic examination of two Aixtron computers by Kivu Consulting, Inc. (Kivu), a computer forensics consulting firm; and (2) the declaration of Adam

Demonaco, the senior director of Kivu, who supervised the forensic analysis of the two computers. Aixtron's request for judicial notice was based on Evidence Code section 452, subdivision (h), which permits a court to judicially notice "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonable indisputable accuracy."

Reviewing courts generally do not take judicial notice of *evidence* that was not presented to the trial court. (*Hotels Nevada v. L.A. Pacific Center, Inc*. (2006) 144 Cal.App.4th 754, 76, fn. 3.) In addition, the subject matter of these declarations is reasonably subject to dispute since Aixtron's and Veeco's experts might disagree regarding Kivu's search protocols, as well as the expert's qualifications and bias. This court therefore denied Aixtron's motion for judicial notice in August 2018. We shall not consider these declarations further and will disregard any reference to them in the briefs.

### D. Both orders are appealable.

#### 1. Parties' Contentions Regarding Appealability

Veeco argues that Aixtron's first appeal is improper because the superior court's August Order, which denied Aixtron's petition for a protective order and rehearing, is not appealable. Veeco analogizes the August Order to an order denying a motion to vacate an arbitration award and argues that such an order is not appealable under section 1294. Alternatively, Veeco argues that even if the August Order is characterized as an order denying a protective order, it is not appealable.

In its reply brief, Aixtron asserts that the August Order is appealable under the authority of *Berglund*, *supra*, 44 Cal.4th 528. Alternatively, it argues that the appealability of the August Order is moot, since Veeco's petition raised the same issues as Aixtron's petition and since Veeco concedes that the December Order is appealable. Aixtron argues that the August Order is appealable because it finally resolved the discovery issue between a party to the arbitration and a nonparty.

19

In its respondent's brief, Veeco challenges only the appealability of the August Order and does not challenge the appealability of the December Order. Shortly before oral argument, we asked the parties to be prepared to discuss *Uber Technologies, Inc. v. Google LLC* (2018) 27 Cal.App.5th 953, 959-960 (*Uber*), which was not final until after briefing in this case was completed. At oral argument, Veeco argued that neither order is appealable under the one final judgment rule or section 1294 and that this case is procedurally distinguishable from *Uber*. While we might otherwise deem the question of the appealability of the December Order forfeited because it was not raised until oral argument, we will exercise our discretion to consider it.

### 2. *Berglund*

" ' "[N]o appeal can be taken except from an appealable order or judgment, as defined in the statutes and developed by the case law . . . ." [Citation.]' " (*City of Gardena v. Rikuo Corp.* (2011) 192 Cal.App.4th 595, 601, italics omitted.) "The existence of an appealable order or judgment is a jurisdictional prerequisite to an appeal." (*Canandaigua Wine Co., Inc. v. County of Madera* (2009) 177 Cal.App.4th 298, 302 (*Canandaigua*).)

"Section 904.1, subdivision (a), governs the right to appeal in civil actions. It codifies the 'one final judgment rule,' which provides that ' " 'an appeal may be taken only from the final judgment in an entire action.' " [Citation.]' [Citation.] A judgment is final, and therefore appealable, when it embodies 'the final determination of the rights of the parties in an action or proceeding' (§ 577.) A judgment constitutes the final determination of the parties' rights ' "where no issue is left for future consideration except the fact of compliance or noncompliance with [its] terms . . . ." [Citation.]' [Citation.]" (*Kaiser Foundation Health Plan, Inc. v. Superior Court* (2017) 13 Cal.App.5th 1125, 1138 (*Kaiser Foundation*).) "The one final judgment rule is a 'fundamental principle of appellate practice that prohibits review of intermediate rulings

20

by appeal until final resolution of the case.' [Citation.] '[A]n appeal cannot be taken from a judgment that fails to complete the disposition of all . . . causes of action between the parties . . . .' " (*C3 Entertainment, Inc. v. Arthur J. Gallagher & Co.* (2005) 125 Cal.App.4th 1022, 1025.) An appeal from a judgment or order that is not appealable must be dismissed. (*Canandaigua, supra*, 177 Cal.App.4th at p. 302.)

There are statutes, apart from section 904.1, that more specifically confer a right of direct appeal. Veeco cites section 1294, which confers a statutory right to appeal certain arbitration orders, including: "(a) An order dismissing or denying a petition to compel arbitration. [¶] (b) An order dismissing a petition to confirm, correct or vacate an award. [¶] (c) An order vacating an award unless a rehearing in arbitration is ordered. [¶] (d) A judgment entered pursuant to [(the CAA)]. [¶] (e) A special order after final judgment." Veeco argues that the August Order denying Aixtron's petition for protective order and for rehearing on the arbitrator's discovery order does not fit any of these categories. Aixtron does not contend otherwise and argues that Veeco's arguments and citation to authority are inapposite since Aixtron did not appeal from such an order.

Aixtron relies on the authority of *Berglund*, *supra*, 44 Cal.4th 528, the Supreme Court's decision regarding the scope of judicial review of an arbitrator's discovery order, to assert that the August Order is appealable. *Berglund* was an action for personal injuries based on alleged negligent medical treatment. The case was eventually ordered to arbitration. (*Id*. at p. 532.) The plaintiff in *Berglund* served a discovery subpoena for the production of documents on a nonparty, which asserted that the documents were privileged and moved for a protective order in the superior court. While that motion was pending, the plaintiff filed a motion with the arbitrator to compel production of the documents. The arbitrator concluded that he had jurisdiction to rule on the motion and ordered the nonparty to produce the documents for his in-camera review. (*Id*. at p. 533.) The superior court subsequently denied the nonparty's motion for a protective order, reasoning that "the arbitrator, not the court, had jurisdiction over [the] discovery

21

subpoena and thus was empowered to compel . . . production of the subpoenaed documents." (*Ibid.*) The nonparty filed a notice of appeal and filed a motion for a stay, or alternatively a petition for writ of supersedeas, prohibition, or other relief in the Court of Appeal. The appellate court denied the request for a stay and denied the writ petition but allowed the appeal of the superior court's order denying the nonparty's motion for a protective order to proceed. The appellate court held that the arbitration proceeding was the proper forum for the nonparty to challenge the discovery sought by a party to the arbitration and that the limitations on judicial review of arbitration decisions do not apply to an arbitrator's discovery orders against a nonparty. The appellate court reversed the superior court and remanded for further proceedings. (*Ibid*.) The Supreme Court granted review and affirmed the Court of Appeal judgment, concluding that (1) a discovery dispute involving a nonparty to an arbitration proceeding "must be submitted first to the arbitral, not the judicial, forum"; and (2) a "nonparty is entitled to full judicial review of the arbitrator's discovery order" and is not subject to the same statutory limitations on judicial review of an arbitrator's order as the parties to the arbitration. (*Id*. at pp. 532, 536-539.)

In reaching its conclusions, the Supreme Court explained: "Generally, an arbitrator's decision in a dispute between parties to an arbitration agreement is subject to only limited judicial review. This is why: An 'arbitration decision is final and conclusive because the parties have agreed that it be so.' [Citation.] Arbitration by agreement is often a 'process in which parties voluntarily trade the safeguards and formalities of court litigation for an expeditious, sometimes roughshod means of resolving their dispute.' [Citation.] Because 'arbitral finality is a core component of the parties' agreement to submit to arbitration' [citation] and because arbitrators are not required to make decisions according to the rule of law, parties to an arbitration agreement accept the risk of arbitrator errors [citation], and arbitrator decisions cannot be judicially reviewed for errors of fact or law even if the error is apparent and causes

substantial injustice [citations]. ' "As a consequence, arbitration awards are generally immune from judicial review." ' [Citation.]" (*Berglund*, *supra*, 44 Cal.4th at p. 534, citing *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 10-12 & *Vandenberg v. Superior Court* (1999) 21 Cal,4th 815, 831-832.)

The court also noted that under section 1283.05, subdivision (c), an arbitrator's discovery order is " 'as conclusive, final and enforceable as an arbitration award on the merits.' " (*Berglund*, at p. 536.) The *Berglund* court held that nonparties "cannot be compelled to arbitrate a dispute" and "are not bound by an arbitrator's decision because the arbitrator's authority is derived from the parties' consent and, . . . , nonparties have not consented to arbitration." (*Id.* at pp. 536, 537.) The court stated that "giving arbitrator discovery orders the same deference normally given arbitration awards would substantially compromise the legal rights of nonparties against whom erroneous discovery orders may be made" and observed that the "normal limitations on judicial review of arbitrator decisions mean that arbitrators need not follow the law and, apart from some narrow exceptions, their errors are not subject to judicial review and correction." (*Id.* at pp. 537, 538.) The court concluded that absent their consent, nonparties were entitled to full judicial review of any adverse discovery order issued by an arbitrator, which was necessary to protect the legal rights of nonparties who had "not consented to arbitration and consequently have not agreed to the finality of arbitrator decisions." (*Id.* at p. 539.)

On its facts, *Berglund* established that a nonparty dissatisfied with an arbitrator's discovery order may seek "full judicial review" by a superior court of that order. It is reasonable to conclude that the Supreme Court's repeated use of the phrase "full judicial review" (*Berglund*, *supra*, 44 Cal.4th at pp. 532, 534, 538, 539) also suggests a right to appellate review of the superior court's order. Thus, Aixtron argues that the August Order is appealable because, as in *Berglund*, its appeal stems from the superior court's denial of a petition for a protective order after a nonparty was served with a subpoena for

23

the production of documents in arbitration.  But the *Berglund* court did not address the question whether a *nonparty* or a party to the arbitration that is dissatisfied with the superior court's decision has a right of direct appeal.  (See *Uber*, *supra*, 27 Cal.App.5th at pp. 959-960 [*Berglund* "did not determine whether a *party to the arbitration* dissatisfied with the superior court decision then has a right of direct appeal"; italics added].)  The Supreme Court noted without comment in its recitation of the procedural status of the case that the appellate court had denied the nonparty's request for a stay and denied its petition for writ of supersedeas but allowed the nonparty's appeal of the superior court's order to proceed.  But the court did not discuss the appealability of that order.  (*Berglund*, *supra*, 44 Cal.4th at p. 533.)  "It is axiomatic that cases are not authority for propositions not considered."  (*People v. Ault* (2004) 33 Cal.4th 1250, 1268, fn. 10.)  *Berglund* thus does not provide clear authority for Aixtron's contention that the August Order is appealable.

### 3.  Uber

Generally, discovery orders are not appealable.  (*Good v. Miller* (2013) 214 Cal.App.4th 472, 475.)  Instead, the challenge to a discovery order must await appeal from a final judgment.  (*Nickell v. Matlock* (2012) 206 Cal.App.4th 934, 940; see also *Marriage of Economou* (1990) 224 Cal.App.3d 1466, 1474-1476.)  But courts have recognized two general exceptions to the one final judgment rule.  Even though issues remain for further determination, a direct appeal may be taken from (1) a collateral final judgment or order, or (2) a judgment that is final as to a party.  (Eisenberg, et al., Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group 2017) ¶¶ 2:76, 2:77, 2:91, pp. 2-54, 2-66.)  The latter exception has been applied to find a right to appeal discovery orders involving nonparties.  (See e.g., *Brun v. Bailey* (1994) 27 Cal.App.4th 641, 649-650 [nonparty deponent became a party by moving for a protective order; denial of that motion was appealable as a final determination of the litigation as to the nonparty].)

In *Uber, supra*, 27 Cal.App.5th 953, 958-962, the appellate court addressed the appealability of a superior court order in a special proceeding to vacate an arbitrator's discovery order and held that a party to an arbitration that is dissatisfied with a superior court order vacating an arbitrator's discovery order in favor of a nonparty has a right of direct appeal based on the one final judgment rule (§ 904.1, subd. (a)). In the underlying dispute in *Uber*, Google, Inc. (Google) initiated arbitration proceedings against two of its former employees for breach of their employment contracts, breach of fiduciary duty, and other claims. Google, a party to the arbitration, issued a discovery subpoena for the production of documents to Uber, a nonparty. (For ease of reference, we shall sometimes use the terms "party" and "nonparty" instead of the parties' names.) The nonparty objected that the documents were privileged, and the party moved in arbitration to compel production of the documents. The arbitration panel rejected the nonparty's privilege claims, granted the motion, and ordered the nonparty to produce the documents. The nonparty filed a special proceeding in the superior court to vacate the arbitrators' discovery order. Unlike the court here, the superior court in *Uber* granted the nonparty's petition and vacated the arbitrators' discovery order. (*Uber*, at p. 957.)

The party appealed, asserting that the superior court's order was final, conclusive, and appealable as an order vacating an arbitration award under section 1294, subdivision (c). "Days later, in an effort 'to accelerate adjudication of the issues raised [in the] appeal,' [the party] petitioned for a writ of mandate, prohibition, and/or other appropriate relief" and asked the appellate court to direct the superior court to vacate the order. (*Uber, supra*, 27 Cal.App.5th at p. 958.) The appellate court summarily denied the writ. Shortly thereafter, the nonparty moved to dismiss the appeal, arguing that the superior court's order was not appealable. The appellate court disagreed and denied the motion to dismiss "because the superior court's order determined all the pending issues in the special proceeding between Google and Uber and was thus a final appealable order." (*Id.* at p. 957.) The court held that a right of direct appeal existed "based on the one final

25

judgment rule," reasoning that the superior court's order was "the final resolution of the special proceeding initiated by [the nonparty] for the sole purpose of vacating" the arbitration panel's discovery order, that the superior court's order resolved the discovery dispute between the party and the nonparty with finality since it relieved the nonparty of any obligation to produce the documents and conclusively determined its obligations to the party, and there was nothing left for the superior court to determine as between them and disposed of all the issues raised in the special proceeding. (*Id.* at p. 960.)

The *Uber* court concluded that the superior court's order also had the finality required under section 1294. The court explained that " '[u]nder section 1294, appealable arbitration orders require finality . . . . ". . . [T]he Legislature's philosophy and intent in drafting section 1294 was that there should be no appellate consideration of intermediate rulings in arbitration disputes if the superior court was of the view that there should be initial or further proceedings in arbitration. . . ." An intermediate ruling in an arbitration dispute that contemplates further proceedings in arbitration is not appealable. [Citations.] Requiring finality in appealable arbitration orders is consistent both with the language of section 1294 and the general prohibition of appeals from interlocutory nonfinal judgments in section 904.1, subdivision (a). [Citations.]" (*Uber*, *supra*, 27 Cal.App.5th at p. 960, quoting *Vivid Video, Inc. v. Playboy Entertainment Group, Inc.* (2007) 147 Cal.App.4th 434, 442-443.) The court concluded that the superior court's order was appealable under section 1294 since it contemplated no further proceedings between Uber and Google and completely resolved their dispute since Uber was not a party to the arbitration. (*Uber*, at p. 960.) The court noted that *Uber* involved "a nonparty to the underlying arbitration, and the single dispute involving the nonparty was conclusively determined by the superior court." (*Id*. at p. 962.) The court held that because the superior court's order was "a final determination of the discovery rights between Uber and Google in the special proceeding commenced for the sole purpose of resolving this discovery dispute, the order is appealable." (*Ibid*.)

We agree with the analysis in *Uber* and conclude that because the superior court's August Order was "a final determination of the discovery rights [between Aixtron and Veeco] in the special proceeding commenced for the sole purpose of resolving this discovery dispute, the order is appealable" under the one final judgment rule and section 904.1. (*Uber*, *supra*, 27 Cal.App.5th at p. 962.) Like the nonparty in *Uber*, Aixtron filed a special proceeding in the superior court for the express purpose of challenging the arbitrator's discovery order. The superior court finally determined Aixtron's and Veeco's rights as to the discovery order when it denied Aixtron's petition. The August Order embodied the final determination of Aixtron's and Veeco's rights in the special proceeding (§ 577).

At oral argument, Veeco argued that neither the August Order on Aixtron's petition nor the December Order on Veeco's separate petition is appealable under the one final judgment rule or section 1294 and that this case is distinguishable from *Uber*. Veeco argued that unlike the order in *Uber,* the orders here are not final because the superior court ordered the parties to return to arbitration for further discovery proceedings before the arbitrator. But Veeco has mischaracterized the superior court's orders. The August Order summarily denied Aixtron's petition for a protective order, and the December Order granted Veeco's petition to enforce the arbitrator's discovery order and ordered Aixtron to produce the responsive documents within 20 days pursuant to the protective order that the parties to the arbitration had already stipulated to in *Veeco Instruments, Inc. v. Miguel Saldana* (Super. Ct. Santa Clara County, 2016, No. 16CV294921). Contrary to Veeco's assertions, the superior court did not order further discovery proceedings before the arbitrator on either occasion.

Both orders were final and appealable because there was no issue left for future consideration except the fact of Aixtron's compliance or noncompliance with their terms. (*Kaiser Foundation*, *supra*, 13 Cal.App.5th at p. 1138.) Veeco acknowledged as much regarding the August Order when it filed its own petition seeking enforcement of the

27

arbitrator's order and an order directing Aixtron to comply with the order's terms. Veeco's petition initiated a separate special proceeding for the sole purpose of enforcing the arbitrator's order. In its petition, Veeco argued that Aixtron was not entitled to object to its petition, since the "matter has been fully adjudicated by the arbitrator" and Aixtron's petition to the superior court had been unsuccessful. Veeco stated that the superior court's "intervention [was] necessary to ensure Aixtron's *compliance*" (italics added) and that the arbitrator's order requiring Aixtron to produce documents was a "conclusive, final, and immediately enforceable award and is subject to confirmation under C.C.P. § 1285." Veeco did not assert that further discovery proceedings were contemplated before the arbitrator or ask the superior court to remand for further discovery proceedings in arbitration regarding its discovery subpoena to Aixtron. Thus, in its briefing and request for relief below, Veeco treated the superior court's August Order as final and appealable and argued there was nothing left to do but ensure Aixtron's compliance with the arbitrator's discovery order. This underscores our conclusions that the August Order was final and appealable, and there was no issue left for future consideration except the fact of Aixtron's compliance or noncompliance with the arbitrator's discovery order. (*Kaiser Foundation*, *supra*, 13 Cal.App.5th at p. 1138.)

As Veeco notes, there are procedural differences between this case and *Uber*. In *Uber*, the nonparty (Uber) that sought to vacate the arbitrator's discovery order prevailed in the superior court and the party to the arbitration (Google) appealed. In contrast here, the nonparty (Aixtron) lost in the superior court and the nonparty appealed. In *Uber*, the superior court vacated the arbitrator's discovery order and the nonparty was not required to produce its documents. Moreover, the superior court's order vacating the arbitrator's discovery order was final as to the privilege issue presented in *Uber*. Here, the superior court's August Order resolved the legal issues presented by Aixtron's petition and Veeco's response, denied nonparty Aixtron's petition for a protective order, leaving the

arbitrator's discovery order in place and requiring Aixtron to produce its documents and computers.

Veeco argued at oral argument that the superior court's validation of the arbitrator's discovery order would result in further arbitration proceedings, and thus the August Order could not be considered final. We do not agree. Both the arbitrator and the superior court issued orders, and assumed compliance with those orders would be forthcoming. The arbitrator found that some of Aixtron's objections to the ordered discovery could be addressed by the use of privilege logs, protective orders, or a third party neutral, but he did not order any further proceedings in arbitration to resolve Aixtron's concerns. Rather, he urged Aixtron to meet and confer with Veeco to craft an appropriate protective order to shield Aixtron from the damage of discovery disclosure, and suggested the parties hire a neutral to oversee sensitive discovery inquiries. The arbitrator's decision was made; and he was not going to work through the gritty details of Aixtron's *compliance* with his discovery order. Nor did the superior court remand the case to the arbitrator for further proceedings in its August Order. In short, the superior court's August Order was a final determination of the discovery rights between Aixtron and Veeco, and thus appealable under *Uber*.

As noted, Veeco filed a separate proceeding in the superior court seeking an order directing Aixtron to comply with the arbitrator's discovery order. In its December Order, the superior court directed Aixtron to produce documents pursuant to an existing protective order between the parties to the arbitration, thus resolving the compliance issue raised in Veeco's petition. Since the December Order ordered compliance with the arbitrator's discovery order, and there was no further issue left for the court's consideration, it was also appealable under *Uber*. (See also *Kaiser Foundation*, *supra*, 13 Cal.App.5th at p. 1138.)

### E. The discovery order exceeded the arbitrator's statutory authority in the circumstances of this case.

Aixtron argues that an arbitrator in a private arbitration has no authority under the FAA or California law to compel nonparty discovery. Aixtron contends that because it is not a party to the arbitration agreement between Saldana and Veeco, it has not consented to the arbitrator's authority or to be bound by the JAMS Rules. Aixtron argues that the arbitration agreement and any arbitration rules Saldana and Veeco have agreed to are insufficient to confer authority on the arbitrator to compel Aixtron to produce documents for the purposes of discovery and that such authority exists only if conferred by statute. Veeco responds that the section 1282.6 of the CAA and the JAMS Rules authorize this subpoena and that it is irrelevant that Aixtron was not a party to the arbitration.

#### 1. Standard of Review

The question whether an arbitrator in a private, contractual arbitration can compel a nonparty to the arbitration to respond to a subpoena duces tecum for the production of business records issued by the arbitrator for the purposes of discovery is a question of law, which we review de novo. (*Aryeh v. Canon Business Solutions, Inc*. (2013) 55 Cal.4th 1185, 1191.) To the extent this question requires us to construe certain statutes and written instruments for which there is no conflicting extrinsic evidence, these are also questions of law, which we review de novo. (*People ex rel. Lockyer v. Shamrock Foods Co*. (2000) 24 Cal.4th 415, 432 [statutory construction]; *Parson v. Bristol Development Co*. (1965) 62 Cal.2d 861, 865-866 [written instruments].)

#### 2. Whether This Case is Subject to the FAA or the CAA

Generally, the first step in reviewing an arbitration dispute is to determine whether the question presented is subject to the FAA or the CAA because different rules apply under the two acts, which in some cases leads to federal preemption. (Knight, et al., Cal Practice Guide: Alternative Dispute Resolution (Rutter Group 2018) ¶ 5:47, pp. 5-40,

30

citing *Southland Corp. V. Keating* (1984) 465 U.S. 1, 12 and other cases; ¶¶ 5:44-5:49.6, pp. 5-40 to 5-5-52.)

The Arbitration Clause does not specify which act applies. The parties dispute whether the FAA or the CAA applies. Aixtron contends the FAA applies because the Veeco Confidentiality Agreement involves interstate commerce. In its papers below, Veeco agreed that the FAA governs this dispute. But on appeal, Veeco argues that the CAA applies because Aixtron filed its petition under the CAA. It also argues that if we conclude that the FAA applies, then we should reject the Ninth Circuit's view in *CVS Health Corp. v. Vividus, LLC* (9th Cir. 2017) 878 F.3d 703 (*CVS Health*), which held that the FAA does not grant arbitrators the power to compel production of documents from nonparties prior to an arbitration hearing. (*Id.* at pp. 705, 708.) Veeco urges us to follow the contrary, minority view adopted by the Sixth and Eighth Circuit Courts of Appeals in *In re Security Life Ins. Co. of America* (8th Cir. 2000) 228 F.3d 865, 870-871 (*Security Life*), and *American Fed'n of Tel. & Radio Artists v. WJBK-TV* (6th Cir. 1999) 164 F.3d 1004, 1009 (*TV Artists*), which hold that the FAA authorizes arbitrators to compel production of documents prior to the hearing. Aixtron responds that it does not matter which arbitration act applies because the result is the same under both the FAA and the CAA.

In addressing this issue, the parties discuss the choice of law clause in the Veeco Confidentiality Agreement. Without much discussion, each side relies on a different United States Supreme Court case: Veeco quotes briefly from *Volt Info. Sciences v. Leland Stanford Jr. U.* (1989) 489 U.S. 468 (*Volt*) and Aixtron relies on *Mastrobuono v. Shearson Lehman Hutton, Inc.* (1995) 514 U.S. 52 (*Mastrobuono*). At first blush, *Volt* and *Mastrobuono* seem to state conflicting rules. Neither party discusses *Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376 (*Cronus*), which resolves the seeming conflict. The *Cronus* court explained, "Under United States Supreme Court jurisprudence, we examine the language of the contract to determine whether the parties

31

intended to apply the FAA to the exclusion of California procedural law and, if any ambiguity exists, to determine whether [the procedural law at issue] conflicts with or frustrates the objectives of the FAA." (*Cronus*, at p. 383.) " 'Like other federal procedural rules, . . . , "the procedural provisions of the [FAA] are not binding on state courts . . . provided applicable state procedures do not defeat the rights granted by Congress." [Citation.]' " (*Id.* at p. 390.) As one commentator cogently explained " '[in] *Volt*, the state policy *furthered* the federal goal of encouraging arbitration, and thus . . . did not require construing ambiguities toward applying the FAA. In *Mastrobuono*, however, the policy at issue would have directly *impeded* the FAA's goals, thus triggering the FAA preemption. As a result, it should hardly be surprising that a choice-of-law clause, in an agreement bound by the contract law and involving the arbitration rules of one state, happened to produce a different result than did a choice-of-law clause in an entirely different context.' " (*Cronus*, at p. 393, quoting Note, *An Unnecessary Choice of Law: Volt, Mastrobuono, and Federal Arbitration Act Preemption* (2002) 115 Harv. L.Rev. 2250, 2259–2260, fns. omitted.)

While the record suggests that Saldana's work may have affected interstate commerce, the parties did not develop that point below and the evidentiary support for that conclusion is thin. Neither the Arbitration Clause nor the choice-of-law clause mentions the FAA. Both clauses are silent on the issue of discovery and the scope of allowable discovery in arbitration. To ensure that we have fully reviewed this matter and foreclose any possibility of federal preemption, we shall examine both federal and state law regarding the authority of an arbitrator to issue a discovery subpoena to a nonparty. As we shall explain, we arrive at the same conclusion under both the FAA and the CAA: the discovery subpoena here was not authorized by either act. We therefore need not resolve the question whether the Arbitration Clause is subject to the FAA or the CAA.

### 3. Discovery from Non-Parties Under the FAA

The right to discovery under the FAA is limited.  Under section 7 of the FAA (9 U.S.C. § 7), arbitrators are authorized to subpoena nonparties to appear before them and to produce documents or other evidence, and the arbitrator's subpoena is enforceable by the district court.[6]  There is a split of authority in the federal courts of appeals regarding the scope of the arbitrator's subpoena power under section 7 of the FAA.  Some courts have interpreted section 7 to restrict the arbitrator's subpoena power to hearings in the physical presence of the arbitrator.  (*Hay Group, Inc. v. E.B.S. Acquisition Corp.* (3d Cir. 2004) 360 F.3d 404, 410 (*Hay Group*) ["Nowhere does the FAA grant an arbitrator authority to order non-parties to appear at depositions, or to demand that non-parties provide . . . documents during pre-hearing discovery"]; *Life Receivables Trust v. Syndicate 102 at Lloyd's of London* (2d Cir. 2008) 549 F.3d 210, 212, 216-217; *CVS Health*, *supra*, 878 F.3d 703, 704-705 [9th Circ.]; *Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc*. (11th Cir. 2019) 939 F.3d 1145, 1160.)  Adhering to this view, one court has stated that an arbitration panel might be able to subpoena a nonparty for prehearing discovery "under unusual circumstances" "upon a showing of special need or hardship."  (*COMSAT Corp. v. National Science Foundation* (4th Cir. 1999) 190 F.3d 269, 275-276.)  Other federal appellate courts have held that "implicit" in the arbitrator's

---

[6] Section 7 of the FAA provides in relevant part:  "The arbitrators . . . , or a majority of them, may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case.  . . .  Said summons shall issue in the name of the arbitrator or arbitrators, or a majority of them, and shall be signed by the arbitrators, or a majority of them, and shall be directed to the said person and shall be served in the same manner as subpoenas to appear and testify before the court; if any person or persons . . . shall refuse or neglect to obey said summons, upon petition the United States district court . . . may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States."  (9 U.S.C. § 7.)

33

power under the FAA to subpoena relevant documents for production at the arbitration hearing "is the power to order the production of relevant documents for review by a party prior to the hearing." (*Security Life, supra,* 228 F.3d at pp. 870-871 [8th Cir.]; *TV Artists, supra,* 164 F.3d at p. 1009 [6th Cir].)

No California appellate court has addressed the issue. The Ninth Circuit reviewed this question in *CVS Health.* In that case, HMC Compounding Services (HMC) sued CVS Health, Express Scripts, and others for alleged antitrust violations. (*CVS Health, supra,* 878 F.3d at p. 705.) HMC's claims against CVS Health were submitted to arbitration, and its claims against Express Scripts were litigated in federal court. (*Ibid.*) The arbitrators issued a records subpoena to Express Scripts, which was not a party to the arbitration. Express Scripts did not respond, and HMC filed a petition in federal district court to enforce the subpoena, which the district court denied. (*Ibid.*) The issue on appeal was "whether the FAA allows an arbitrator to order a third party to produce documents as part of pre-hearing discovery." (*Id.* at p. 706.) After reviewing section 7 of the FAA and opinions from other federal appellate courts, the Ninth Circuit concluded that the FAA does not grant arbitrators that power and affirmed the district court. The court held that section 7 of the FAA gives arbitrators two powers: (1) to compel the attendance of persons to appear as witnesses at the hearing and (2) to compel such persons to bring relevant documents to the hearing. (*Ibid.*) The court held that a "plain reading of the text of section 7 reveals that an arbitrator's power to compel the production of documents is limited to production at an arbitration hearing," and that "section 7 grants an arbitrator no freestanding power to order third parties to produce documents other than in the context of a hearing." (*Ibid.*, fn. omitted.)

The *CVS Health* court noted that in *Security Life,* the Eighth Circuit had reasoned that " 'implicit in an arbitration panel's power to subpoena relevant documents for production at a hearing is the power to order the production of relevant documents for review by a party prior to the hearing,' " which furthered "efficient resolution of disputes

34

by allowing parties to 'review and digest' documents before hearings." (*CVS Health*, *supra*, 878 F.3d at p. 707, citing *Security Life*, *supra*, 228 F.3d at pp. 870-871.) The *CVS Health* court rejected this rationale, stating: "it is not absurd to restrict third-party discovery to the disclosures that can be made at a hearing; third parties 'did not agree to [the arbitrator's] jurisdiction' and this limit on document discovery tends to greatly lessen the production burden upon non-parties." (*CVS Health*, at p. 708.) " 'Under a system of pre-hearing document production, by contrast, there is less incentive to limit the scope of discovery and more incentive to engage in fishing expeditions that undermine some of the advantages of the supposedly shorter and cheaper system of arbitration.'[] . . . Practical constraints on document production during an arbitration hearing may often result in lower production demands upon third parties. [Citation.] Moreover, an arbitrator's power under section 7 extends only to documentary evidence 'which may be deemed material . . . ,' further demonstrating that under the FAA an arbitrator is not necessarily vested with the full range of discovery powers that courts possess." (*Id.* at p. 708.) The court rejected the proposition that the FAA grants arbitrators implicit powers to order document discovery from nonparties prior to a hearing and declined to create additional discovery powers for arbitrators. (*Ibid.*) We find this reasoning persuasive and adopt the holding in *CVS Health*.

### 4. Discovery from Nonparties Under the CAA (§§ 1283.05 & 1283.1)

The right to discovery in arbitration proceedings under the CAA "is generally limited" and "highly restricted." (*Berglund*, *supra*, 44 Cal.4th 528, 534; *Alexander v. Blue Cross of California* (2001) 88 Cal.App.4th 1082, 1088 (*Alexander*); *Armendariz v. Foundation Health Psychcare Services, Inc*. (2000) 24 Cal.4th 83, 106, fn.11 (*Armendariz*) ["a limitation on discovery is one important component of the 'simplicity, informality, and expedition of arbitration' "], abrogated in part on another ground as stated in *ATT Mobility LLC. v. Concepcion* (2011) 131 S.Ct. 1740, 1746.)

Aixtron contends that the applicable statutory authority for conducting discovery in arbitration cases is found in sections 1283.1 and 1283.05 and argues that these statutes do not authorize discovery in this case. Our State Supreme Court has said that "[s]ections 1283.1 and 1283.05, . . . , grant arbitrators authority over discovery in certain arbitration proceedings." (*Berglund*, at p. 535; accord *Brock v. Kaiser Foundation Hospitals* (1992) 10 Cal.App.4th 1790, 1802, fn. 10 (*Brock*) ["arbitrators have authority to order discovery in certain types of arbitration proceedings"].) Sections 1283.05 and 1283.1 are both in chapter 3 of the CAA, which governs the conduct of arbitration proceedings.

Section 1283.05 describes the circumstances under which "depositions may be taken and discovery obtained in arbitration proceedings," as well as the powers of the arbitrator with regard to such discovery. Subdivision (a) of section 1283.05 incorporates the Civil Discovery Act (§§ 2016.010 et seq.) and authorizes discovery "as if the subject matter of the arbitration were pending before a superior court." This statutory grant of authority is subject to the limitation in subdivision (e) of section 1283.05, which provides that "[d]epositions for discovery shall not be taken unless leave to do so is first granted by the arbitrator or arbitrators." (§ 1283.1, subds. (a), (e).) "Section 1283.05's subdivision (b) grant arbitrators the power to enforce discovery through sanctions" similar to the power of a trial court, " 'except the power to order the arrest or imprisonment of a person.' " (*Berglund*, *supra*, 44 Cal.4th at p. 535.) Subdivision (c) of section 1283.05 gives the arbitrator the power to issue discovery orders imposing "terms, conditions, consequences, liabilities, sanctions and penalties." (*Ibid.*)

The discovery authorized in section 1283.05 is subject to one more important limitation. Section 1283.05 begins with the phrase, "[t]o the extent provided in section 1283.1." This phrase limits the application of the deposition and discovery rules in section 1283.05 to the circumstances described in section 1283.1. The *Brock* court held that an arbitrator's authority to order discovery "is statutorily conferred" and applies to

36

the types of arbitrations described in section 1283.1. (*Brock*, *supra*, 10 Cal.App.4th at p. 1802, fn.10.)

Subdivision (a) of section 1283.1 "provides that section 1283.05 is incorporated into and made part of every agreement to arbitrate any dispute arising out of a *claim for wrongful death or for personal injury*."[7] (*Berglund*, *supra*, 44 Cal.4th at p. 535; italics added.) Since the dispute between Veeco and Saldana is not a claim for wrongful death or personal injury, subdivision (a) of the statute does not apply.

Subdivision (b) of section 1283.1 provides that in "all other arbitrations, the arbitrator may grant discovery '[o]nly if the parties by their agreement so provide . . . .' " (*Brock*, at p. 1802, fn. 10, quoting § 1283.1, subd. (b).) Thus, to determine whether the arbitrator had the authority to order discovery under the CAA, we must determine whether Veeco and Saldana provided that authority through their arbitration agreement. (§ 1283.1, subd. (b).) One treatise has opined that a "simple agreement for discovery 'pursuant to the California Discovery Act' or 'pursuant to CCP § 1283.05' creates enforceable discovery rights." (Knight, *supra*, ¶ 5:386.6, p. 5-388, citing § 1283.1, subd. (b); see e.g. *OTO, LLC v. Kho* (2019) 8 Cal.5th 111, 119 (*OTO*) [arbitration clause in acknowledgment of at-will employment provided that arbitration would be conducted pursuant to the CAA, "with full discovery permitted (see . . . § 1283.05)"]; *Cox v. Bonni* (2018) 30 Cal.App.5th 287, 304-305 (*Cox*) [arbitration agreements that "provided that discovery would be conducted pursuant to section 1283.05" "expressly granted the parties the same ability to obtain discovery that they would have had in the trial court"].) Unlike the arbitration clauses in *OTO* and *Cox*, the Arbitration Clause here does not

---

[7] Section 1283.1, subdivision (a) provides: "All of the provisions of Section 1283.05 shall be conclusively deemed to be incorporated into, made a part of, and shall be applicable to, every agreement to arbitrate any dispute, controversy, or issue arising out of or resulting from any injury to, or death of, a person caused by the wrongful act or neglect of another."

mention the California Discovery Act or section 1283.05, or even contain the word "discovery." Since Veeco and Saldana have not provided for discovery in their arbitration agreement, we conclude that section 1283.05 does not apply in this case.

### 5. *Interpretation of Section 1282.6*

Veeco relies on a different code section and argues that section 1282.6 authorized the arbitrator to sign and issue the discovery subpoena to Aixtron. Veeco contends that section 1282.6, which governs the issuance of subpoenas in arbitration, provides that a subpoena may be issued for discovery purposes either when section 1283.05 applies or whenever a neutral arbitrator issues and signs the subpoena. Veeco argues that unlike section 7 of the FAA, the arbitrator's authority to issue subpoenas under section 1282.6 is not limited to commanding the production of records at the hearing. In reply, Aixtron argues that section 1282.6 applies to deposition subpoenas and subpoenas duces tecum for the purpose of producing documents at the arbitration hearing and not for discovery.

The issue is one of statutory interpretation. "In construing a statute, our fundamental task is to ascertain the Legislature's intent so as to effectuate the purpose of the statute. [Citation.] We begin with the language of the statute, giving the words their usual and ordinary meaning. [Citation.] The language must be construed 'in the context of the statute as a whole and the overall statutory scheme, and we give "significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." ' [Citation.] In other words, ' "we do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' " ' " (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83.) The parties do not cite, and our research has not disclosed any cases that have construed section 1282.6. The issue is therefore one of first impression.

Section 1282.6 provides in its entirety: "(a) A subpoena requiring the attendance of witnesses, and a subpoena duces tecum for the production of books, records,

38

documents and other evidence, at an arbitration proceeding or a deposition under Section 1283, *and if Section 1283.05 is applicable, for the purposes of discovery*, shall be issued as provided in this section.  In addition, the neutral arbitrator upon his own determination may issue subpoenas for the attendance of witnesses and subpoenas duces tecum for the production of books, records, documents and other evidence.  [¶]  (b) Subpoenas shall be issued, as of course, signed but otherwise in blank, to the party requesting them, by a neutral association, organization, governmental agency, or office if the arbitration agreement provides for administration of the arbitration proceedings by, or under the rules of, a neutral association, organization, governmental agency or office or by the neutral arbitrator.  [¶]  (c) The party serving the subpoena shall fill it in before service. Subpoenas shall be served and enforced in accordance with Chapter 2 (commencing with Section 1985) of Title 3 of Part 4 of this code."  (Italics added.)

Section 1282.6 describes the procedures used in arbitration for issuing "a subpoena requiring the attendance of witness, and a subpoena duces tecum for the production of books, records, documents and other evidence."  (§ 1282.6, subd. (a).)  The first sentence in subdivision (a) limits its application to three circumstances:  (1) "at an arbitration proceeding"; (2) at "a deposition under Section 1283," and (3) "*if Section 1283.05 is applicable*, for the purposes of discovery . . . ."  (§ 1282.6, subd. (a).)  As we shall explain, none of these three circumstances applies here.

The first circumstance for which a subpoena may be used to compel the attendance of witnesses and the production of evidence is "at an arbitration proceeding." (§ 1282.6, subd. (a).)  Based on its plain language, we construe this phrase to mean an arbitration hearing before an arbitrator or panel of arbitrators.  The subpoena at issue here was a discovery subpoena; it did not demand that Aixtron produce documents or other evidence (its computers) for an arbitration hearing.

The second circumstance for which a subpoena may be used to compel attendance of witnesses and production of documents is at "a deposition under Section 1283."

39

(§ 1282.6, subd. (a).) Under section 1283, an arbitrator, on application of a party, "may order the deposition of a witness to be taken for use as evidence *and not for discovery* if the witness cannot be compelled to attend the hearing or if exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally at the hearing." (Italics added.) Notably, section 1283 underscores the importance of presenting the testimony of witnesses orally at the hearing (i.e., live testimony before the arbitrator). The subpoena here was not for a deposition for evidentiary purposes under section 1283.

The third circumstance for which a subpoena may be used in arbitration to compel attendance of witnesses and production of evidence is "if Section 1283.05 is applicable, for the purposes of discovery." Thus, the procedures for issuing subpoenas described in section 1282.6 may only be used for the purposes of discovery if section 1283.05 applies. But as we have stated, section 1283.05 does not apply in this case.

Subdivisions (b) and (c) of section 1282.6 describe the procedures to be used for the issuance of subpoenas in arbitration. Subdivision (b) provides that a "neutral association" like JAMS may issue subpoenas "as of course, signed but otherwise in blank, to the party requesting them." Subdivision (c) of section 1282.6 provides that the party shall fill in the subpoena before serving it and that subpoenas shall be served and enforced in accordance with "Chapter 2 . . . of Title 3 of Part 4" of the Code of Civil Procedure, which includes sections 1985 to 1997. We construe the word "party" in section 1282.6 to mean a "party to the arbitration," which is defined in section 1280, subdivision (e). As a practical matter, in most cases, the party's attorneys will obtain and serve the subpoena.

Veeco focuses on discovery subpoenas and argues that section 1282.6, subdivision (a) authorizes the issuance of *discovery* subpoenas in two circumstances: (1) when section 1283.05 applies; and (2) when the neutral arbitrator signs and issues the subpoena. Veeco contends that since the arbitrator signed and issued the discovery

subpoena to Aixtron, "[t]hat makes all the difference," and the arbitrator's signature was "dispositive." As we have stated, the first sentence of section 1282.6, subdivision (a) describes three circumstances in which an arbitrator may issue a subpoena. Veeco's argument and the two circumstances it identifies are not consistent with the language of section 1282.6 or our interpretation of subdivision (a) of section 1282.6. Rather than focus on the first sentence, Veeco relies on the second sentence of that subdivision, which provides: "In addition, a neutral arbitrator upon his [or her] own determination may issue subpoenas for the attendance of witnesses and subpoena duces tecum for the production of books, records, documents, and other evidence." (§ 1282.6, subd. (b).) Veeco's contention appears to be that the second sentence defines a fourth circumstance in which a subpoena may be issued in arbitration and a second circumstance in which a subpoena may be issued for the purposes of discovery: namely, when the arbitrator signs the subpoena.

In support of this assertion, Veeco cites an unpublished, tentative decision from the superior court in Los Angeles County—not even its appellate department—in an unrelated case that has no precedential value and is not citable authority. (Cal. Rules of Court, rule 8.1115(a) [unpublished appellate court or superior court appellate department opinions "must not be cited or relied on by a court or a party in any other action"]; *Bolanos v. Superior Court* (2008) 169 Cal.App.4th 744, 761 [citation of unrelated trial court order improper].)

Veeco also relies on the following language from the Knight treatise on alternative dispute resolution: "**CAUTION—Signature of attorney v. arbitrator authorizing subpoena:** Unless the parties have incorporated rules allowing for discovery under CCP § 1283.05 into their arbitration agreement . . . , attorneys are *not* authorized to sign the subpoena. But many attorneys assume they have such authority regardless of the agreement. If the discovery provision is *not* incorporated, the *arbitrator* must sign the subpoena." (Knight, *supra*, ¶ 5:390.1, p. 5-401.) The treatise does not cite any primary

41

authority supporting this statement. In the previous paragraph, entitled "Subpoenas," the treatise states "[a]rbitrators have power to issue subpoenas for witnesses and for production of documents . . . *at the hearing*"; it does not mention discovery. (*Id.* at ¶ 5:390, p. 5-400.) While secondary sources like practice guides and treatises are not compelling authority, they may be persuasive when there is an absence of precedent. (See e.g., *Kucker v. Kucker* (2011) 192 Cal.App.4th 90, 95.) But such sources "certainly are not binding" (*Ammerman v. Callender* (2016) 245 Cal.App.4th 1058, 1086), especially when, as here, they do not cite any authority for the asserted rule. In the absence of any relevant precedent, we return to the language of the statute.

As noted, the second sentence in subdivision (a) of section 1282.6 (hereafter Second Sentence) provides: "In addition, a neutral arbitrator upon his own determination may issue subpoenas for the attendance of witnesses and subpoena duces tecum for the production of books, records, documents, and other evidence." (§ 1282.6, subd. (a).) Unlike the initial sentence in subdivision (a) of section 1282.6, which describes three circumstances in which subpoenas may be issued, the Second Sentence does not describe the circumstances in which an arbitrator may issue a subpoena "upon his own determination." Veeco contends the Second Sentence grants the arbitrator unlimited powers to issue subpoenas, both for the arbitration hearing and for the purpose of discovery, as long as the subpoena is signed by the arbitrator. But the Second Sentence says nothing about the arbitrator signing the subpoena or about discovery from which we may conclude that the statute grants the arbitrator broad authority to order discovery.

As we have noted, subdivisions (b) and (c) describe a procedure by which the parties to the arbitration may obtain a blank subpoena issued by the neutral association (or other entity listed in section 1282.6), fill out the subpoena, and serve it on the prospective deponent or records custodian, without involving the arbitrator in the process. The Second Sentence provides that in addition to the procedure outlined in subdivisions (b) and (c), which authorizes the parties to the arbitration to issue subpoenas, the

42

arbitrator may issue subpoenas "upon his own determination." Another reasonable interpretation of the statute is that the initial sentence of subdivision (a) describes the three circumstances under which a subpoena may be issued, regardless of whether the subpoena is issued by the neutral association at the request of one of the parties or by the arbitrator. Under this interpretation, the arbitrator's authority is not unlimited. Instead, it is limited to the three circumstances described in the first sentence in subdivision (a).

Since the language of the Second Sentence is arguably subject to these two conflicting interpretations, we may resort to extrinsic evidence, including the statute's legislative history as an aid to interpretation. (*Title Ins. & Trust Co. v. County of Riverside* (1989) 48 Cal.3d 84, 96 ["in construing the terms of a statute we resort to the legislative history of the measure only if its terms are ambiguous"].)

Section 1282.6 was enacted in 1961 as a part of a comprehensive overhaul of the CAA. (Stats 1961, ch. 461, p. 1540.) The prior act (former Code Civ. Proc., §§ 1280-1293) was enacted in 1927 and repealed by the 1961 legislation. (*Ibid.*; Recommendation and Study Relating to Arbitration (Dec. 1960) 3 Cal. Law Revision Com Rep. (1960) p. G-28 (Law Revision Rep.).) The 1961 revisions to the CAA did not contain sections 1283.05 or 1283.1, the code sections discussed above that currently provide for limited discovery in arbitration. The Law Revision Commission report that lead to the 1961 revisions to the CAA noted that "[i]t would be most unwise and inappropriate in an arbitration proceeding to permit the taking of depositions . . . for discovery purposes of the parties" and opined that subpoenas duces tecum should not be used "for the purpose of a 'fishing expedition.' " (Law Revision Rep., pp. G-48 to G-49.) When section 1282.6 was enacted in 1961, it provided: "Upon application of a party to the arbitration or upon his own determination, the neutral arbitrator may issue subpoenas for the attendance of witnesses and subpoenas duces tecum for the production of books, records, documents and other evidence. Subpoenas shall be served and enforced in accordance with Chapter 2 (commencing with Section 1985) of Title 3 of Part 4 of this code." (Stats

43

1961, ch. 461, § 2.) Based on the legislative history and the language of the statute in 1961, we conclude that the subpoena authorized by former section 1282.6 was intended to be used to compel the attendance of witnesses and the production of documents and other evidence at the arbitration hearing only and not for discovery purposes.

As originally enacted, section 1282.6 provided that only the arbitrator could issue subpoenas, either upon application of a party to the arbitration or on the arbitrator's own motion. (Former § 1282.6) Section 1282.6 was amended once, in 1982, to read as set forth above. (Stats. 1982, ch. 108, § 1.) As noted, it currently provides that subpoenas may issue in three circumstances, including for discovery if section 1283.05 applies. In addition to authorizing the arbitrator to issue subpoenas, the 1982 amendment provided a procedure whereby the parties to the arbitration may obtain a blank subpoena from the neutral association (or other enumerated entity) and fill out and serve the subpoena, without having to make an application to the arbitrator. When amended in 1982, section 1282.6 retained most of the language from the original statute in the Second Sentence, which provides that "in addition" to the procedure whereby the parties may issue subpoenas, "the neutral arbitrator upon his own determination may issue subpoenas for the attendance of witnesses and subpoenas duces tecum for the production of books, records, documents and other evidence." (§ 1282.6, subd. (a).) This was almost identical to the language of the original statute, except that it deleted the introductory phrase "[u]pon application of a party to the arbitration," which was no longer necessary because the 1982 amendment provided a mechanism for the parties to obtain and serve subpoenas without the arbitrator's involvement.

Given this legislative history, we reject Veeco's contention that the Second Sentence grants the arbitrator broad powers to issue subpoenas in arbitration for the purpose of discovery. As originally enacted, the subpoena power granted by section 1282.6 applied only to subpoenas for the arbitration hearing. When amended in 1982, the subpoena power granted by section 1282.6 was broadened to the three circumstances

44

described in the first sentence of subdivision (a): (1) for the arbitration hearing, (2) for a section 1283 deposition, and (3) for the purposes of discovery, but only if section 1283.05 applies. (§ 1282.6, subd. (a).) We conclude these limitations on circumstances in which a subpoena may issue in arbitration apply to subpoenas issued by both a party to the arbitration and the arbitrator. Our construction is consistent with case law that describes the right to discovery in arbitration under the CAA as "limited" and "highly restricted." (*Berglund*, *supra*, 44 Cal.4th 528, 534; *Alexander*, *supra*, 88 Cal.App.4th at p. 1088.) To construe section 1282.6 as granting arbitrators unlimited power to issue discovery subpoenas as long as the subpoena is signed by the arbitrator, is inconsistent with the limitations on discovery in sections 1283.05 and 1283.1. Such an interpretation would also nullify the limits on discovery in sections 1283.05 and 1283.1, rendering both sections superfluous. For all these reasons, we reject Veeco's assertion that the Second Sentence in subdivision (a) of section 1282.6 granted the arbitrator unlimited powers to issue discovery subpoenas and authorized the discovery subpoena here. Since the arbitration agreement here does not provide for discovery or reference section 1283.05, we conclude that the arbitrator did not have the authority to issue the discovery subpoena to Aixtron in this case.

### 6. Discovery from Nonparties Under the JAMS Rules

Veeco argues that its arbitration agreement with Saldana provided for section 1283.05 discovery rights as required by section 1283.1, subdivision (b) "by incorporating in their Agreement arbitration rules that offer discovery rights like those that section 1283.05 confers." That assertion is not supported by a citation to the record or any legal authority.

The Arbitration Clause provided that the arbitration shall be conducted "in accordance with the National Rules for Resolution of Employment Disputes of the American Arbitration Association." The Arbitration Cause did not mention discovery,

the Civil Discovery Act, or section 1283.05.  In its petition below, Veeco told the court that Saldana and Veeco had agreed to arbitrate this dispute at JAMS and abide by the JAMS rules instead of the AAA rules.  But the record does not contain any other written agreement between Veeco and Saldana that may have superseded the Arbitration Clause.[8]

We nonetheless examine the JAMS Rules to see what they provide with regard to discovery.  Rule 17 of the JAMS Rules, entitled "Exchange of Information," generally provides for *limited discovery between the parties*.[9]  But it does not incorporate the Civil Discovery Act or mention section 1283.05.  JAMS Rule 17 does not provide the parties to the arbitration broad rights to discovery comparable to those in section 1283.05 or authorize discovery from nonparties.

JAMS Rule 21, which Veeco cites, is entitled "Securing Witnesses and Documents for the Arbitration Hearing."  It does not contain the word "discovery."  It provides that the "Arbitrator may issue subpoenas for the attendance of witnesses or the production of documents either prior to or at the Hearing pursuant to this Rule or Rule 19(c).  The subpoena or subpoena *duces tecum* shall be issued in accordance with the

---

[8] The only other document in the record that Veeco has characterized as an arbitration agreement is a "Notice to All Parties" regarding the "Commencement of Employment Arbitration" issued by JAMS on June 9, 2016.  That notice states:  "This arbitration shall be conducted in accordance with JAMS Employment Rules" and is signed by a JAMS case manager, not the parties to the arbitration.  In our view, this is not an agreement between Veeco and Saldana.

[9] Subdivision (a) of Rule 17 provides for a "voluntary and informal exchange of non-privileged documents and other information . . . relevant to the dispute . . . immediately after commencement of the Arbitration" and describes the types of information that must be exchanged.  Subdivision (b) of the rule provides that each party "may take at least one deposition of an opposing Party or an individual under the control of the opposing Party," encourages party agreement when scheduling depositions, and authorizes the arbitrator to resolve any disputes about depositions.  Subdivision (c) describes the parties' continuing obligation to exchange information and subdivision (d) sets forth procedures for resolving discovery disputes.

applicable law."[10]  Since the discovery subpoena here was not authorized by either the FAA or the CAA, it was not authorized by JAMS Rule 21.

Moreover, only Veeco and Saldana—the parties to the arbitration—agreed to be bound by the JAMS Rules.  As the Supreme Court stated in *Berglund*, "the arbitrator's authority is derived from the parties' consent" and "nonparties have not consented to arbitration." (*Berglund*, *supra*, 44 Cal.4th at p. 537.)  Nonparties are entitled to full judicial review of arbitrator discovery orders because "arbitrators are not required to follow the law when resolving the parties' disputes, and their decisions as to parties cannot be judicially reviewed for errors of fact or law" and giving arbitrator discovery orders the same deference normally given arbitration awards would substantially compromise the legal rights of nonparties against whom erroneous discovery orders may be made." (*Ibid*.)  The arbitration and the application of JAMS Rules obtain their legal force based on party consent as reflected in the terms of the arbitration agreement or statutes that authorize limited discovery in arbitration.  Aixtron did not consent to be bound by the JAMS rules, the Arbitration Clause did not authorize discovery from nonparties, and neither the FAA nor the CAA authorize nonparty discovery in this case.

For these reasons, we reject Veeco's contention that the JAMS Rules provided it with discovery rights that are comparable to those in section 1283.05 and that those rules authorized the discovery subpoena here.

In summary, based on the language of the arbitration agreement in this case, the statutes and case law cited above, we hold that the arbitrator's pre-hearing discovery subpoena for Aixtron's business records and computers was not authorized under the FAA, the CAA, or the JAMS Rules.  Since we conclude the arbitrator did not have the authority to issue the discovery subpoena to Aixtron, we shall not reach Aixtron's

_____

[10] JAMS Rule 19(c) authorizes the arbitrator to conduct the hearing at any JAMS location for the convenience of the parties or the witnesses.

contention that the superior court erred in ordering it to comply with the subpoena because Veeco failed to make the requisite showing that the information it seeks is both *necessary* to a claim or defense and *essential* to a fair resolution of the dispute in arbitration and or its contentions that Veeco's document requests are overly broad, unduly burdensome, and harassing.

### III.    DISPOSITION

The superior court's August 2017 order denying Aixtron's petition and its December 2017 order granting Veeco's petition are reversed.  The superior court is directed to enter new orders granting Aixtron's petition, vacating the arbitrator's discovery order, quashing the discovery subpoena to Aixtron, and denying Veeco's petition to enforce the arbitrator's discovery order.  Aixtron shall recover its costs on appeal.

_____
Greenwood, P.J.

WE CONCUR:

_____
Bamattre-Manoukian, J.

_____
Danner, J.

*Aixtron, Inc. v. Veeco Instruments, Inc. et al. and*
*Veeco Instruments, Inc. v. Aixtron, Inc. et al.*
H045126/ H045464

Trial Court:                                   Santa Clara County Superior Court
                                               Superior Court Nos.: 17CV311362 &
                                               17CV315493

Trial Judges:                                  The Honorable William J. Elfving &
                                               The Honorable Peter H. Kirwan


Attorney for Plaintiff and Appellant,          Bryan Alexander Merryman
AIXTRON, INC.:                                 John Taylor Akerblom
                                               White & Case LLP




Attorneys for Defendants and Respondents,      Bradford Korey Newman
VEECO INSTRUMENTS INC., et al.:                Baker & McKenzie, LLP




Attorney for Plaintiff and Respondent,         Bradford Korey Newman
VEECO INSTRUMENTS INC.:                        Baker & McKenzie, LLP




Attorneys for Defendants and Appellants,       Bryan Alexander Merryman
AIXTRON INC., et al.:                          John Taylor Akerblom
                                               White & Case LLP



*Aixtron, Inc. v. Veeco Instruments, Inc. et al. and*
*Veeco Instruments, Inc. v. Aixtron, Inc. et al.*
H045126/ H045464